RICHARD LEE PRICE *v.* STATE OF MARYLAND

[No. 211, September Term, 1967.]

*Decided August 14, 1968.*

The cause was argued before MURPHY, C.J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Irving B. Klitzner* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Charles E. Moylan,
Jr., State's Attorney for Baltimore City,* and *Barrett Freed-
lander, Assistant State's Attorney for Baltimore City,* on the
brief, for appellee.

PER CURIAM.

On June 29, 1967 appellant was convicted of conspiracy to
rob by Judge Thomas J. Kenney, sitting without a jury in the
Criminal Court of Baltimore, and sentenced to a term of four
years under the jurisdiction of the Department of Correction,
to be served concurrently with a sentence he was already serv-
ing.[1] Appellant's sole contention on appeal is that the evidence
was insufficient to convict him.

There was evidence adduced at the trial showing that Powell
Stanley Thompson met with Robert Huemmer and George Huff
at the Little House Bar on January 6, 1967 and "talked about
making money"; that Huemmer showed him a .32 caliber re-
volver; that approximately a week later Huemmer, Huff,
Thompson and appellant met at the Little House Bar; that
Huemmer stated that he had "a job lined up," a fuel oil com-
pany on Pulaski Highway; and that "it was just about time to

---

1. Robert L. Huemmer, a co-defendant, was convicted under the
same indictment and received a similar sentence. He did not appeal
his conviction. George J. Huff, another co-defendant, was found
not guilty.

pull this job"; that the men rode up Pulaski Highway and Huemmer pointed out the Deinlien Oil Company as the place to be held up; that the robbery was originally planned to take place on January 19, 1967, Huff and Thompson being designated to enter the premises and bind and blindfold Mr. Deinlien, with Huemmer and appellant entering later to take the money from the safe; that they proceeded to the Deinlien Oil Company on January 19 and, as Huff and Thompson started up the stairs, Huff observed the lady next door looking out her window; that Huff became apprehensive about being identified and they left the scene; that the defendants all met that evening and agreed to commit the hold up the next day; that on January 20, 1967 Huemmer stated that Huff would not be present because he was ill, and that Thompson would have to enter Deinlien's alone; that after appellant and Huemmer reconnoitered the area, Thompson entered the premises at approximately 3:10 p.m. and told Mr. Deinlien that this was "supposed to be a hold up"; that "there are two other fellows that are coming in behind me"; and that he, Thompson, had a pistol in his left hand coat pocket.

The evidence further showed that Sergeant William J. Hirsch of the Eastern District had been forewarned that a holdup might take place, and was waiting at the Deinlien Oil Company when Thompson entered. Sergeant Hirsch placed Thompson under arrest. Approximately five minutes later Sergeant Hirsch, having been informed by Thompson that Huemmer and appellant would be along shortly, observed Huemmer drive to the front of the Deinlien Oil Company in a "1965 Olds" and then speed off. He could not identify appellant as the other occupant of the car. It was later learned that the car observed by Sergeant Hirsch was registered to Thompson's wife.

Detective Furrie Cousins of the Baltimore City Police Department was also a party to the stake-out. After receiving a radio instruction to be on the lookout for two white males "to come in off of Bowley's Lane" in a "1965 Olds," he proceeded towards Deinlien's where he observed Huemmer driving the aforementioned car, and appellant seated on the passenger side. To prevent them from leaving the scene, Detective Cousins rammed their car, but they nevertheless managed to flee the area.

David C. Faulkner, an F.B.I. agent, testified as to a conversation he had with Thompson on approximately January 13, 1967. Thompson told him at that time that he had information that "some individuals were planning a robbery of a * * * fuel oil company near Frankford Avenue and Pulaski Highway in Baltimore," and that appellant, Huemmer, and someone known as "Bo" (later identified as Huff) would be the other participants in the robbery. Faulkner conveyed this information to the Baltimore City Police, which resulted in the stake-out and the eventual apprehension of appellant, Huemmer, Thompson and Huff.

Appellant's contention that the evidence was insufficient to convict is grounded on the argument that the State's only proof of the existence of the conspiracy to rob came in through the testimony of Thompson, that this testimony was "so contradictory as to be ridiculous," that Judge Kenney expressly stated that he did not believe Thompson's testimony, and that in any event, as Thompson was an accomplice, his testimony was not legally sufficient to convict since it was uncorroborated.

In Maryland, as generally, the gist of a conspiracy is the entering into of the illegal scheme or design, and once this occurs, the crime is complete without the doing of an overt act. *Greenwald v. State,* 221 Md. 235. The testimony of an accomplice is clearly admissible to prove a conspiracy, *Foster v. State,* 230 Md. 256, and the conspiracy may also be shown by circumstantial evidence from which an inference of common design may be drawn, it not being vital to demonstrate that the conspirators met and agreed in terms to a set design and to pursue it by common means. See *Hill v. State,* 231 Md. 458; *Seidman v. State,* 230 Md. 305.

On the record before us, it is plain that Thompson's testimony established the existence of a conspiratorial plan to rob the Deinlien Oil Company, the appellant being one of four participants in the plan. We think Thompson's testimony was corroborated by the fact that appellant and Huemmer were observed at the scene of the intended robbery on the day fixed by the conspirators for its commission and the fact that appellant fled the scene when the police attempted to apprehend him tends to establish his participation in the planned robbery.

While it is true that Judge Kenney voiced some concern as to the credibility of Thompson's testimony, we think it manifest that in the final analysis he found Thompson's testimony relative to the existence of the conspiracy to be sufficiently credible to justify conviction. We cannot, therefore, find that the lower court's judgment was clearly erroneous under Maryland Rule 1086.[2]

*Judgment affirmed.*

---

2. Thompson was not indicted for the conspiracy, although he was charged individually with attempted armed robbery. It is not entirely clear from the record just why Thompson turned informer, or why he decided **to participate in the robbery.**