ALFRED JEROME JOHNSON *v.* STATE
OF MARYLAND

[No. 260, September Term, 1969.]

*Decided April 14, 1970.*

328

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Milton B. Allen* and *David B. Allen* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles*

*E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Stewart* and *Fred K. Grant, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Alfred Jerome Johnson, was tried on March 13, 1969 in the Criminal Court of Baltimore by a jury, Judge Basil A. Thomas presiding, for robbery with a deadly weapon. He was convicted and was sentenced to twenty years under the direction of the Department of Correctional Services. Appellant presents seven questions on appeal:

I Was the conduct of the prosecuting attorney so prejudicial as to deprive the appellant of a fair trial?

    A. Did the prosecuting attorney ask leading questions and repeat the answers of the State's witnesses and thus unfairly prejudice the jury against the appellant?

    B. Did the conduct of the prosecuting attorney in displaying and inquiring about a shotgun that was not used in the robbery unfairly prejudice the jury against the accused?

    C. Did the closing argument of the prosecuting attorney comment on the failure of the appellant to testify, thus violating the accused's privilege against self-incrimination?

II Was the photographic identification procedure used by the State's attorney so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentifications?

III Did the State's attorney fail to lay a proper foundation for the introduction of hearsay testimony concerning various incriminating

statements made by accomplices in the presence of the defendant?

IV Does the testimony of one who is not an accomplice need corroboration before it is capable of supporting a conviction if by testifying the witness may gain leniency in pending criminal matters?

V Did the introduction of evidence relating to a trip made by two codefendants shortly after the robbery unfairly prejudice the jury against the appellant?

VI Did a comment of the trial judge concerning the admissibility of part of a State's witness's testimony unfairly prejudice the jury against the appellant?

VII Was the appellant deprived of fundamental fairness and thus deprived of his right to a fair and impartial trial?

The testimony adduced at trial revealed that on Friday, June 21, 1968 at approximately 1:30 p.m. the Equitable Trust Company Bank located at 3121 St. Paul Street in Baltimore was robbed by four masked Negro men and $12,125.63 was taken. The men fled to the rear of the bank, entered a white Chevrolet driven by a fifth man, and left the scene. Two of the robbers, Anderson Caison and Charles Cofield, testified on behalf of the State and identified the appellant as one of the other persons involved in the robbery.

I

Appellant first contends that the conduct of the State's attorney was such that it constituted prejudice against him and thus denied him a fair trial. Appellant bases this contention on three separate grounds: (A) The prosecution's use of leading questions and repetition of witnesses' answers; (B) the prosecution's references to and display of a shotgun not used in the robbery; and (C) an alleged reference by the prosecution to the appellant's failure to testify.

## A.

A leading question generally is a question which suggests to the witness the specific answer desired or a question admitting of being answered by a simple "yes" or "no". 3 Wigmore, *Evidence,* §§ 769 and 772. See also *Wolf v. State,* 143 Md. 489; *Boone v. State,* 2 Md. App. 80. Appellant has referred us to twenty-two instances in the trial record which he contends constituted leading questions. Having reviewed the record, we find twelve of these questions to be not leading within the established definition. Seven other questions were never answered because objections thereto were sustained, one was withdrawn, and one was never answered by the witness. The only question which was leading and the answer received in evidence was asked to Anderson Caison and concerned whether the car he drove on the day of the robbery was equipped with a tachometer.

The allowability of leading questions is within the sound discretion of the trial judge. *Hubbard v. State,* 2 Md. App. 364. At trial the court requested the State's attorney to refrain if possible from asking leading questions. We cannot say that the trial judge abused his discretion in permitting one leading question to go to the jury.

Appellant also contends he was prejudiced by the State's attorney's repetition of the witnesses' responses. Appellant has referred us to twelve instances in the trial record which he contends constitute repetition of answers. From the record we find nine of these statements to be not repetitive. The other three statements are merely summations of prior testimony made in the course of a trial encompassing more than 500 pages of transcript and they do not constitute prejudice to the appellant. In a trial of the length of the instant one it is necessary at times for the State's attorney to keep the evidence in proper perspective. We cannot say that the trial court abused its discretion in permitting this recapitulation of testimony.

## B.

Appellant contends that the display of and reference to a shotgun which was not used in the robbery was prejudicial to him. His claim apparently is that it was not relevant to the charge. If extraneous matter or evidence explains the actions and movements of the accused, either before or after the crime, it is relevant and thus admissible. *MacEwen v. State,* 194 Md. 492. Any fact which supplies a motive for the crime or which constitutes a preparation for the crime is admissible. *Meyerson v. State,* 181 Md. 105. The testimony adduced at trial showed that appellant had been planning to use the shotgun in the robbery, that a pin was missing therefrom making the gun inoperable, and thus the gun was not taken by Johnson to the scene of the robbery. The testimony revealed that one of the other participants picked up the gun, after the robbery, from the home of Mary Johnson where it had been left by the appellant prior to the robbery. We think the testimony as to the shotgun was properly admitted as it revealed an act of the appellant in preparation for the crime. In addition, it was equally relevant in that it tended to establish the reliability and credibility of the testimony presented by other witnesses.

## C.

Appellant next contends that the trial court erred in refusing to grant a mistrial for alleged improper comment by the State's attorney concerning the appellant's failure to testify. The appellant failed at the trial to invoke Rule 32 of the Rules of the Supreme Bench of Baltimore City and thus the closing argument of the State's attorney which contained the alleged prejudicial remark does not appear in the trial transcript. In addition, the appellant has not sought to supply the omission in the record as provided for in Maryland Rule 1027b. It is the responsibility of the appellant under Md. Rule 1026 c 2 to include in the record any matter which he wishes the Court to review on appeal. See *White v. State,* 8 Md. App.

51. What does appear in the record is the appellant's motion for mistrial which states:

> "Well, I think that perhaps the comment at the end of his peroration to the effect, that 'if the defendant was not at the scene of the bank robbery from the day of the robbery, where was he,' amounts to a violation of a rule in this State which says that they cannot comment on the accused failing to take the stand."

Even assuming that the comment alleged was made, the trial judge was not in error in denying the motion for mistrial. In *King v. State,* 190 Md. 361, the State's attorney during argument stated, "There had never been any evidence to refute the fact that these illegal machines were in Mr. King's place or not -." Objection was made to the comment which was overruled. The Court of Appeals stated in 190 Md. at 374: "There is nothing to suggest that the State's attorney was commenting on his failure to testify. We are of opinion that the statement by the State's attorney was not a violation of the Constitutional provision or statute law. *Davis v. State,* 168 Md. 10." In the instant case there is nothing to indicate that the State's attorney was commenting on the defendant's failure to testify, as he was merely reviewing the undisputed testimony of the State's witnesses. As was stated in *Dunlop v. United States,* 165 U. S. 486 at 492, "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." We find no merit to appellant's contention.

## II

After *voir dire* had been completed, and prior to the calling of the first witness, the appellant made a motion seeking to have the court prohibit the use by the State for identification purposes of two sets of photographs.

The court stated that it would deny the motion if the
State could prove that the photographs were shown to
prospective witnesses under proper surroundings. As-
sistant State's Attorney Robert Stewart was called as a
witness on the motion. He testified that on several occa-
sions he had shown the photographs to prospective State's
witnesses. On February 20th or 21st, 1969, he and Ser-
geant Salvatore Corona of the State's Attorney's Investi-
gative Division interviewed James Wilson. Wilson se-
lected one of the photographs shown him as being one of
the persons he had seen leaving the Equitable Trust Com-
pany on June 21, 1968. The photograph was identified as
Franklin Alonzo Lewis, one of the codefendants. Mr.
Stewart testified that there was nothing done to draw
Wilson's attention to the particular photograph. He fur-
ther testified that Wilson was shown the photographs a
second time with the same result. Mr. Stewart stated that
in showing the photographs he was careful to avoid fo-
cusing on a particular photograph. If a witness had pre-
viously identified a photograph and it appeared on the
top of the stack it was moved to the middle of the stack.
Mr. Stewart testified that he and Sergeant Corona had
also shown a series of photographs to Mrs. Fanny Buck-
son from which she selected the photograph of Alfred
Jerome Johnson. He stated that there was nothing done
to draw Mrs. Buckson's attention to any particular photo-
graph. The court found from the testimony that the pro-
cedure as outlined did not give rise to a very substantial
likelihood as to irreparable misidentification and denied
the defense motion.

At trial James Wilson testified that on June 21, 1968,
at approximately 1:30-2:00 p.m., he was standing on
32nd Street in Baltimore behind the Equitable Trust Com-
pany Bank located on St. Paul Street. As he stood there,
three Negro men ran out of the bank, jumped into a white
car, in which a fourth man was seated, and the car sped
away. At trial he was handed a group of photographs and
stated that he had seen the group of photographs five or
six times prior to trial. Over defense objection the photo-

graphs were marked as State's Exhibit 4A through 4K. Wilson then identified photograph 4B as being a picture of one of the men (Lewis) he had seen run from the bank and get into the back seat of the white car. On cross-examination he stated that he had been shown the photographs one or two times by Sergeant Corona and four or five times by Assistant State's Attorney Robert Stewart. He had seen the photographs twice in the last week before trial.

In proceedings in chambers, subsequent to Wilson's testimony, the appellant made a motion for a mistrial based on an allegation that the State had rehearsed Wilson's selection of photograph 4B. The court denied the motion for the same reasons he had denied the pretrial motion to suppress the photographs.

Fanny Buckson testified that at 4:30 p.m. on June 21, 1968 she saw the appellant and Anderson Caison alight from a taxicab and enter Mary Johnson's apartment at 2433 E. Eager Street. She engaged in a conversation with the appellant before he entered the apartment and saw him leave the apartment two or three minutes later and re-enter the taxicab. She stated that prior to the June 21st encounter the appellant was a stranger to her. She made an in-court identification of the appellant as the man she had seen on June 21st. She stated that she based her identification on the fact that the appellant was the same size, same complexion, and had the same features as the man she talked to on June 21st. She testified that she had been shown photographs in July of 1968, again in January 1969, and again on the day of trial. She further stated that each time she was shown photographs she was shown "a whole group", and that she would not have needed to have seen the photographs to have identified appellant at trial.

Appellant contends on appeal that the procedure used in the pretrial viewing of photographs by Mrs. Buckson and Mr. Wilson was prejudicial to his rights. Appellant relies on *Simmons v. United States,* 88 S. Ct. 967, in which the Court held that conviction based on eye-witness iden-

tification at trial following a pretrial review of photographs would only be set aside if "that photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 88 S. Ct. at 971. The Court found that each case must be decided on its own particular set of facts.

In *Bailey v. State,* 6 Md. App. 496, the identification witness was shown a group of six or seven photographs on more than one occasion and had been shown the photographs again on the day of trial. The witness testified that the Assistant State's Attorney did not in any way indicate to her which one to pick out. In ruling on the admissibility thereof, this Court stated at page 506-7:

> "Although it appeared that the witnesses had been shown photographs by the police at some time after the crime there was no showing or allegation that the procedure then followed was in any way improper. Nor do we see anything improper in the State or defense counsel discussing the case with the State's witnesses in a fair manner, even on the morning of the trial, to be aware of the nature of their testimony. The showing of the photographs to the witnesses, in the circumstances the Assistant State's Attorney did here, was not *per se* improper . . . . . the lower court could have properly found the viewing of the photographs, on the totality of the circumstances, was not in fact so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

See also *Nance v. State,* 7 Md. App. 433; *Joyner v. State,* 7 Md. App. 692; *Gibson v. State,* 5 Md. App. 320; *Thompson v. State,* 6 Md. App. 50.

Here appellant has not shown that the conduct of the State's attorney was in any way improper nor that the procedure followed was improper or prejudicial to the

appellant. Nor do we find anything improper in the circumstances of this case in the State's attorney showing Mrs. Buckson the photographs on the day of trial. Cf. *Rath v. State*, 3 Md. App. 721. Under the circumstances as shown by the record the lower court could properly have found the procedure used to exhibit the photographs was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

## III

Appellant next challenges the admission in evidence of statements made by three of the State's witnesses. The statements were hearsay as they were statements made by other persons and were admitted in evidence over objection. The question is whether the statements were admissible as exceptions to the hearsay rule. Anderson Caison, a codefendant, testified for the State on direct examination as follows:

"Q. What, if anything, did Tommy Lucas say in the presence of the defendant while you were at the bus stop on 32nd and Calvert Street?

A. Well, he said, Tommy Lucas said, they didn't want to go in the bank because it was two sides to the bank and that he thinks it was a little too large.

Q. What, if anything, did Charles Clifford Cofield say in the presence of the defendant at the bus stop on 32nd and Calvert Streets?

A. He said, 'Well, let's go in the bank'. The rest of us said, that they didn't want to. So he said, 'Me and Bunny are going in by ourselves'."

Charles Cofield, one of the robbers, testified for the State on direct examination as follows:

"Q. What, if anything, did Bunny say in the presence of the defendant at 32nd and Calvert Streets?

A. Well, Chicago and Tommy, they told me, they said where the bank is situated behind the front place, they don't think we should rob it.

Q. What happened then?

A. Well, I asked Bunny, I said, 'What do you want to do, Bunny?'

Q. When you asked Bunny, where was the defendant, Mr. Johnson?

A. He was in his presence.

Q. What did Bunny say?

A. 'I'm tired of riding around, I want some money.'

Q. So what was decided, if anything?

A. Well, beings as Johnson and Lucas said they didn't want to go in, why, I said, I asked Caison, 'Did he want to drive a car for me and Bunny?'

Q. What happened then?

A. Well, me, Bunny and Caison started to cross the street, and I asked Tommy and Chicago, 'Where can I meet you all later?' So, they said, 'You're going to meet us right now; we're with you.' "

Leroy Koonce testified for the State on direct examination as follows:

"Q. All right, sir. Now during that ride of twenty-five to thirty minutes from Greenmount and North Avenue to Mr. Simpson's house in West Baltimore, what, if anything, was said with respect to the Equitable Trust robbery?

A. Well, they were talking about—Cofield and Alfred, at the time they were laughing at Lewis, how he jumped over the counter.

Q. All right. Now, can you tell us who was talking about this bank robbery?

A. Jerome and Cofield the first time.

Q. Now, by Jerome who do you mean?

A. Al.

Q. Alfred Johnson?

A. Right.

Q. All right, sir. And what, if anything, did Mr. Johnson say about the bank robbery?

A. They were laughing and talking about how he was jumping over the counter.

Q. Who was that he was talking about?

A. Franklin Lewis.

Q. All right, sir. And what, if anything, else was said that you know?

A. I can't remember if there was anything else said. I didn't pay particular attention. I know they were laughing at that.

Q. All right. Now, of the three men that were with you that day; that is, the defendant Alfred Jerome Johnson, Franklin Lewis and Charles Clifford Cofield, how many of them were participating in this conversation about the bank robbery?

A. Well, all three of them were participating at one time and another."

"When several persons are proved to have unlawfully conspired to commit a crime, the acts and declarations of any conspirator during such conspiracy, and in furtherance thereof, are admissible as substantive evidence against any co-conspirator on trial." *Wharton's Criminal Evidence* (12th Ed.) Vol. II, Sec. 416. The Court of Appeals in *Lawrence v. State,* 103 Md. 17, adopted this rule of evidence but qualified it by stating at 103 Md. 20, "a foundation must first be laid, by proof, sufficient in the opinion of the judge, to establish, *prima facie,* the fact of conspiracy between the parties . . ." See also Underhill, *Criminal Evidence* (5th Ed.), Sec. 861. "[T]he gist of a conspiracy is the entering into of the illegal scheme or design, and once this occurs, the crime is complete without the doing of an overt act. *Greenwald v. State,*

221 Md. 245. The testimony of an accomplice is clearly admissible to prove a conspiracy, *Foster v. State,* 230 Md. 256, and the conspiracy may also be shown by circumstantial evidence from which an inference of common design may be drawn . . ." *Price v. State,* 4 Md. App. 701 at 704.

"... When once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent to, or command, what is said or done by any one of them in furtherance of the common object.

\* \* \*

"The declarations may be written, oral, or both. They may be admitted to prove any point, such as the existence of the conspiracy, the course of events in its inception and operation . . . the preparation for the commission of the crime . . . , the relations of the parties, . . . . and the acts done to conceal the offense. *Wharton, supra,* Sec. 416. See also Underhill, *supra,* Sec. 861.

\* \* \*

"The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission: . . . ." *Wharton, supra,* Sec. 430. See also Underhill, *supra,* Secs. 179 and 864.

Prior to the statement made by Anderson Caison, which the appellant challenges, Caison had testified that he, Charles Cofield, Tommy Lucas, Franklin (Bunny) Lewis, and the appellant had "cased" several other banks in the area earlier in the day of June 21, 1968, but for

various reasons, including the presence of policemen or an inordinate number of customers, the banks were not robbed. The five men had previously armed themselves and obtained masks with which they sought to conceal their identity. The five men then approached the Equitable Trust Company on St. Paul and 32nd Streets in two automobiles. The men got out of their cars and walked several times around the Equitable Trust Company Bank. The clear impact of Caison's testimony up until the time of the challenged statement was that the five men had set out that day to rob a bank and that their arming themselves, obtaining masks and "casing" of banks were all part of the general robbery plan. We find that there was sufficient evidence before the trier of fact, prior to the challenged statement, for it to conclude that the State had shown a *prima facie* case of conspiracy to commit robbery. A *prima facie* case of conspiracy having been presented, the testimony of Anderson Caison as to the statement of Tommy Lucas was admissible under the co-conspirator exception to the hearsay rule. The same applies more forcibly to the challenged testimony of Charles Cofield. Prior to Cofield's testimony, Caison had concluded this testimony and outlined in detail the commission of the robbery itself.

The challenged testimony of Leroy Koonce concerned a conversation which occurred subsequent to the commission of the robbery. The prior testimony had established a conspiracy, and we find that the conspiracy carried over to the concealment of the crime after the robbery took place. The challenged statement came after the robbery and before the arrest of the participants and thus took place when the participants were actively concealing their perpetration of the robbery. The testimony of Leroy Koonce as to statements made by Cofield and the appellant subsequent to the robbery was admissible under the co-conspirator exception to the hearsay rule.

IV

Appellant next contends that the testimony of Leroy Koonce, admittedly not an accomplice, was just as unre-

liable as that of an accomplice and therefore it should have necessitated the same corroboration that is required of the testimony of an accomplice. Appellant does not cite nor can we find any authority for the creation of the class of witnesses called "defacto accomplices" by the appellant. We are not persuaded that the special rules which apply to accomplices should be expanded to other classes of people. The trier of fact in this case had before it the defense's rigorous cross-examination of Koonce and his own confession as to participation in other crimes. The challenge to Koonce's credibility goes to the weight rather than the admissibility of his testimony. No corroboration of his testimony is required to make his testimony admissible.

## V

Appellant contends that certain testimony by Charles Cofield should have been excluded as irrelevant. The record reveals that the defense made timely objection to the testimony offered. Cofield testified that on the evening of the day of the robbery he and Franklin Lewis purchased four tickets at a Greyhound bus station and planned a trip to Atlantic City, New Jersey. Cofield and Lewis accompanied by Cofield's wife and a girl named Cindy then went to Atlantic City and spent two or three days. Two photographs were introduced at trial. The photographs depicted Lewis, Mr. and Mrs. Cofield and an unidentified fourth party in Atlantic City on June 22, 1968, the day after the robbery.

The reception or rejection of evidence is a matter within the sound discretion of the trial judge. *Koprivich v. State*, 1 Md. App. 147. All reasonable presumptions necessary to uphold the ruling of the lower court will be indulged. *Stewart v. State*, 1 Md. App. 309. We think the testimony as to the trip to Atlantic City was properly admitted as it established a definite connection immediately subsequent to the robbery between Cofield and Franklin Lewis, one of the individuals Cofield named as a participant in the crime. There was other testimony at trial linking Lewis to appellant Johnson; in particular, testi-

mony by Leroy Koonce concerning a conversation in which Cofield and the appellant Johnson were discussing Lewis' actions during the perpetration of the robbery. The testimony was relevant to establish the reliability and credibility of other witnesses for the prosecution and, in particular, the two accomplices, Anderson Caison and Charles Cofield.

## VI

Appellant's sixth contention is that the trial judge erred in failing to grant a mistrial because of a comment made by the court during a ruling upon the admissibility of the testimony of a witness for the State.

The comment referred to was made during the direct examination of Leroy Koonce by the State's Attorney and was as follows:

"Q. All right, sir. Now, can you tell us the circumstances in which you saw this shotgun?

A. Well, Tommy Lucas was having a little trouble cross-town on Pennsylvania Avenue and —

Mr. Allen: I object to this if Your Honor please.

The Court: Yes, that's not a responsive answer.

Mr. Stewart: Well, I think it will become apparent why it is responsive, Your Honor. Rather than—Mr. Allen has been objecting to the leading nature of my questions; I'm simply going to let the witness tell the story.

Mr. Allen: But this relates the presence of someone else other than the defendant, if Your Honor please. That's why I'm objecting.

The Court: That's the grounds for your objection? They're all tied in this thing. I'll overrule your objection, let him proceed."

No objection was made by appellant's counsel at the time to the comment made by the trial judge in overrul-

ing the objection. However, later in the trial, appellant's counsel brought the remark to the trial judge's attention and then made a motion for a mistrial based on the premise that the comment made by the court could influence the jury towards finding Koonce to be a credible witness. After hearing argument at the bench, the court overruled the motion for a mistrial, commenting that he did not wish to bring this to the jury's attention at this time for fear that it might emphasize something that was not in their minds but would take care of it in his instructions.

Later the trial judge gave the following instructions:

"I repeat what I have previously said, that you as jurors are the final judges of the law and of the facts, and the Court's instructions and anything that I may say to you is advisory only. You are not to be influenced in any way by my comments that might have been made by me at any time during the trial or by the disposition that I have made of any motions during the trial or of any comments of mine regarding any such disposition or any of the rulings concerning the admission of evidence or any comments of mine concerning the testimony of any of the witnesses in the case or any ruling I have made during the course of the trial as any of these things does not impart an opinion of the Court as to the guilt or innocence of the accused, or the credibility to be given to the testimony of any witness or the weight to be afforded any evidence or testimony in the case.

"Nor should you be influenced in any way by my manner of speaking or any emphasis of mine during the course of these instructions or indeed, at any time throughout the trial of this case as such comments or actions are not intended to reflect any personal feelings of mine about this case or as to any evidence or testi-

mony in the case or what your decision in the case ought to be."

We are of the opinion that the instructions of the trial judge were sufficient under the circumstances, as it is not clear from the record that the trial judge realized such a comment had been made or that the jury had heard it. Moreover, it had not been called to the court's attention at the time it was made. We therefore find no error in failing to grant the belated motion for a mistrial. See *Baldwin v. State*, 5 Md. App. 22.

## VII

The substance of appellant's final contention is that a review of the six other contentions considered together compels a conclusion that appellant was deprived of fundamental fairness at trial. Having found no merit to the above six contentions, we find no merit to the final contention.

*Judgment affirmed.*