# GLENN OWEN FUNKHOUSER *v.* STATE OF MARYLAND

[No. 748, September Term, 1981.]

*Decided February 8, 1982.*

The cause was argued before WILNER and MacDANIEL, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Patrick R. Hudson* for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *David M. Simpson, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

## I.

About five years ago the General Assembly enacted comprehensive legislation with respect to sexual offenses in which it recognized that there were gradations of severity in the perpetration of the common law crime of rape. Maryland Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.) Art. 27, §§ 462 and 463.[1] It classified rape and other sexual offenses by degrees with penalties of varying harshness and spelled out what constituted the crimes it created. §§ 462-464C. It prescribed that a person is guilty of the felony of rape in the first degree

---

1. Prior to 1976 the rape statute, Md. Code (1957, 1976 Repl. Vol.) Art. 27, § 461, was primarily a sentencing law, fixing the punishment without defining the crime. Rape in Maryland was the common law felony. *See* Hazel v. State, 221 Md. 464, 157 A.2d 922 (1960); note, *Rape and Other Sexual Offense Law Reform in Maryland,* 1976-1977, 7 U. Balt. L. Rev. 151, 152 (1977).

"if the person engages in vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person . . .,"

provided any one of four certain aggravating circumstances was present. § 462 (a). One of such circumstances is that "[t]he person commits the offense aided and abetted by one or more other persons." § 462 (a) (4).

The statute is silent about the culpability of the person who aids and abets the actual perpetrator of the rape. Therefore, his status is determined under the common law. *Lutz v. State,* 167 Md. 12, 15, 172 A. 354 (1934); *Hooper v. Baltimore,* 12 Md. 464, 475 (1859); *Gray v. State,* 43 Md. App. 238, 241-243, 403 A.2d 853, *cert. denied,* 286 Md. 747 (1979), and cases therein cited. Under common law, a person who commits a crime as a perpetrating actor, either by his own hand or the hand of an innocent agent, is a principal in the first degree. A person present, actually or constructively, aiding and abetting the commission of the crime, but not himself committing it, is a principal in the second degree, provided there is a guilty principal in the first degree.[2] *Agresti v. State,* 2 Md. App. 278, 280, 234 A.2d 284 (1967). "[A]s a matter of common law the distinction between principals in the first degree and those in the second degree is one of fact rather than of legal consequence. Their guilt is exactly the same. . . ." R. M. Perkins, *Criminal Law,* 657-658 (2d ed. 1969). The Court of Appeals noted in *Vincent v. State,* 220 Md. 232, 239, n. 1, 151 A.2d 898 (1959): "In Maryland, as in many other states, there is little practical difference between a principal in the first and second degree, and the defendant claims no benefit from such a shadowy distinction." Thus, a principal in the second degree is charged with the substantive offense and may be found guilty of it and be subject to the penalty authorized for it just as if he

---

2. The proviso does not mean that the principal in the first degree must have been previously convicted. On the trial of the principal in the second degree it is enough if evidence is adduced legally sufficient to show the guilt of the principal in the first degree. Clark and Marshall, *A Treatise on the Law of Crimes* § 8.02 (7th ed. 1967).

were the principal in the first degree. *See Camphor v. State,* 233 Md. 203, 196 A.2d 75 (1963).

Glenn Owen Funkhouser was jointly indicted with Robert Scott Weatherbee but separately tried before a jury in the Circuit Court for Prince George's County. After the court disposed of motions for judgment of acquittal, four charges remained for the determination of the jury: rape in the first degree (2d count), assault and battery (4th count), kidnapping (5th count), and false imprisonment (6th count). The second count presented that Funkhouser and Weatherbee "did commit rape in the first degree in that they unlawfully engaged in vaginal intercourse with [a certain named person], by force and threat of force, against the will and without [her] consent . . . [and] were aided and abetted by one another, in violation of Article 27, Section 462 of the Annotated Code of Maryland, 1957 edition, as amended, and against the peace, government and dignity of the State." Under this charge, which was properly drawn, Funkhouser was to be found guilty of rape in the first degree upon legally sufficient evidence that he was either a principal in the first degree or a principal in the second degree, in the commission of that crime.

The evidence placed before the jury was sufficient to prove beyond a reasonable doubt the corpus delicti of first degree rape, the criminal agency of Weatherbee as the actual perpetrator of the crime and the criminal agency of Funkhouser as being present and aiding and abetting Weatherbee's criminal act.[3] Upon the acceptance by the jury of this evidence, a proper verdict as to Funkhouser would be guilty of rape in the first degree.

The rendering of the verdicts is set out in the transcript of the trial as follows:

"(Whereupon, at 8:00 p.m., the jury returned to the jury box and rendered the following verdicts: Aiding and abetting in first degree rape, 'Guilty',[4]

---

**3.** There was evidence that Weatherbee had vaginal intercourse with the victim without her consent while Funkhouser forcibly held her down. Funkhouser did not have vaginal intercourse with the victim.

**4.** The verdict was entered on the docket as " 'Guilty' as to Count 2 — First Degree Rape."

Assault and Battery, 'Guilty', Kidnapping, 'Not Guilty', False imprisonment, 'Guilty'. The jury was duly hearkened to its verdicts)."

Defense counsel requested that the roll be called. The transcript reads: "(Whereupon, the jury was duly polled, each juror answering 'Yes' to the question 'Is the foreman's verdict your verdict?')". After a brief bench conference not concerning the return of the verdicts, the jury was discharged from any further consideration of the case.

There was no timely objection to the verdict rendered on the rape charge. But, of course, a person cannot be punished in a criminal proceeding upon a finding that he committed an act which was not a crime. Taking the words of the verdict literally, there is no such crime as "aiding and abetting a first degree rape." As we have seen, one who so aids and abets is not guilty of the aiding and abetting as an offense, but is guilty of the rape by reason of his aiding and abetting. Furthermore, "it is elementary that a defendant may not be found guilty of a crime of which he was not charged in the indictment." *Turner v. State,* 242 Md. 408, 414, 219 A.2d 39 (1966). "[A] judgment based on a jury's verdict of guilty of a crime for which the prisoner was never accused is invalid." *Barber v. State,* 16 Md. App. 235, 241, 295 A.2d 814 (1972). It is self-evident that neither of these defects could be waived by a lack of timely objection so as to permit the judgment to stand. It follows that unless the verdict of the jury here may be deemed as a determination by it that Funkhouser was guilty of first degree rape as charged in the second count of the indictment and as entered on the docket, the judgment entered thereon must be reversed.

We observe that in rendering the verdict as it did, the jury was guided by the court. With the approval of defense counsel and the prosecutor, the court submitted to the jury before it began its deliberations a document entitled "Possible Verdicts." The four charges the jury was to decide were set

---

In their briefs, both Funkhouser and the State speak of the indictment as charging "aiding and abetting first degree rape" and of the conviction as being for "aiding and abetting first degree rape."

out, and the jury was to indicate opposite each one whether the verdict was "not guilty" or "guilty." The first "possible verdict" was designated as "Aiding and Abetting in First Degree Rape." [5]

Although the judge referred in her charge to the jury to the second count as "the count of aiding and abetting in first degree rape," we believe that she fairly set out the correct law. She gave "the legal definition of first degree rape" and then "the concept of aiding and abetting, so that you will put them together in your mind." She defined rape "as an act of vaginal intercourse with a woman accomplished by force or threats of force against her will and without her consent." [6] She correctly explained the meaning of "vaginal intercourse," force and threats, consent, and aiding and abetting. With reference to the last she said:

"A person who aids or abets the principal offender may be guilty of the principal offense even though he did not personally commit each of the acts constituting the offense itself.

. . . .

Under the common law, persons who are present either actively or constructively and who aid and abet the commission of a crime, but do not themselves commit it, are principals in the second degree."

She made clear that an aider and abettor was guilty as a principal.[7]

---

5. When the document was returned by the jury and filed in open court, "Aiding and Abetting in First Degree Rape" was checked "guilty," "Assault and Battery" was checked "guilty," "Kidnapping" was checked "not guilty," "False Imprisonment" was checked "guilty," all in accord with the verdicts rendered.

6. We note that the comprehensive legislation enacted defined sexual offenses in non-gender terms.

7. We believe that the court's instructions were adequate to overcome any possible confusion arising from remarks of counsel. The prosecutor correctly stated the law in his opening statement:

"The defendant in this case is not actually the one that perpetrated the sexual act, but he was there, as an aider and abettor.... An aider and abettor is one who aids and abets another in the course of a crime such as first degree rape.

It is readily apparent why the term "aiding and abetting" was so heavily emphasized. The determination whether Funkhouser aided and abetted the commission of the rape was essential both to the proof of the corpus delicti of rape in the first degree under Art. 27, § 462, as charged in count two of the indictment, and to the proof of the criminal agency of Funkhouser under the common law. In other words, if the jury was convinced beyond a reasonable doubt that Weatherbee had vaginal intercourse with the complainant by force, against her will and without her consent, the rape, on the evidence adduced, would be in the first degree only if he was aided and abetted by another person, and Funkhouser would be guilty of that offense only if he were that other person. In this light, the verdict as rendered validly reflected a finding of guilty on the charge presented by the second count. The verdict clearly showed findings of the jury on the elements necessary for the conviction of Funkhouser under the charge — the commission of a rape in the first degree and his criminal agency as aider and abettor. In other words, it accurately indicated "The finding of the Jury . . . pertaining to the merits of the offense charged." Md. Rule 702g.

Although the possible verdict under the second count could have been better stated, it is established that

---

. . . .
Although the defendant in this case is not the one that committed the sexual act, he does aid and abet in all actions against [the victim]. That will make him as guilty as the party in the first part."

The defense did not dispute this view of the law in its opening statement. It claimed that the evidence would show that Funkhouser did not aid and abet the fornication.

In arguing motions for judgment of acquittal, it seems that both the State and the defense became confused. The State, at times, spoke in terms of "accessory," declaring that the second count charged Funkhouser as an accessory and that the evidence shows that he was an accessory. Defense counsel said that the second count charged Funkhouser "with being an aider and abettor."

In closing statements, both sides muddled the issue. The State indicated that the Legislature made "a special provision in the rape law that we include and hold culpable the person that aids and abets in the commission of a rape." As we have indicated, this is not correct. Defense counsel, citing § 462, argued that a person who aids and abets the commission of a rape cannot be convicted unless he had vaginal intercourse with the victim. As we have indicated, this also is not correct.

"[w]here the meaning of the verdict is so unmistakable, mere artificiality in its form will not be sufficient to defeat justice by a nullification of a verdict which plainly declared the intent of the jury to convict [on the charge]. Under these circumstances, it is the duty of the court to enforce the rule that every intendment is made in support of the finding of the jury, which was responsive, certain and complete, within the comprehension of laymen, and, so, of the court." *Simmons v. State,* 165 Md. 155, 169-170, 167 A. 60 (1933), *citing Hechter v. State,* 94 Md. 429, 439-443, 50 A. 1041 (1902).

The Court in *Simmons* quoted with approval *Bishop's New Criminal Procedure,* § 1005 a(1), which included the assertion: "Whatever conveys the idea to the common understanding will suffice." 165 Md. at 170. *See Mayne v. State,* 45 Md. App. 483, 487, 414 A.2d 1, *cert. denied,* 288 Md. 739 (1980), *cert. denied,* 450 U.S. 910 (1981). In *Barber v. State, supra,* we upheld the verdict where the charge was attempted robbery with a deadly weapon, and the verdict was rendered as "guilty of armed robbery with a deadly weapon" and hearkened as "guilty of armed robbery." We said: "The very purpose of language is to express ideas; when the language used unmistakably expresses a conclusion, technicalities in the form of the verdict cannot be used to invalidate that verdict." 16 Md. App. at 242.

Here, the docket entry as recorded, " 'Guilty' as to Count 2 — First Degree Rape," correctly reflects the jury's verdict.

## II.

The State filed a motion *in limine* seeking to preclude the defense from introducing evidence with respect to the prosecuting witness's chastity and past sexual conduct. The matter was heard prior to trial. Funkhouser claims that the court erred in granting the motion over his objection.

A motion *in limine* is not a ruling on evidence; it adds a procedural step prior to the offer of evidence. It serves the

useful purpose of raising and pointing out before trial, certain evidentiary rulings that the court may be called upon to make. Under this rationale and citing substantial authority in support, we have held that the *denial* of a motion *in limine* cannot of and in itself constitute reversible error. *Offutt v. State,* 44 Md. App. 670, 677-678, 410 A.2d 611 (1980); *Lapelosa v. Cruze,* 44 Md. App. 202, 206-209, 407 A.2d 786 (1979), *cert. denied,* 287 Md. 754 (1980); *Ory v. Libersky,* 40 Md. App. 151, 163-165, 389 A.2d 922, *cert. denied,* 283 Md. 737 (1978). The authorities relied upon in reaching that holding are to the effect that the same rule applies to the *grant* of a motion *in limine. See Lapelosa* at 208; *Offutt* at 677. We now hold that the grant of a motion *in limine* cannot in and of itself constitute reversible error.

Funkhouser would have us test the constitutionality of Md. Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.) Art. 27, § 461A, which bans reputation and opinion evidence relating to the victim's chastity, except in certain categories after an *in camera* hearing to determine whether particular evidence is admissible. The question is not properly before us. We gather from a comment of the court at the pre-trial hearing on the motion *in limine* that there had been a chambers conference earlier that morning on the matter, but if those proceedings were reported, the record submitted to us does not include a transcript of them. At the pre-trial hearing defense counsel objected to grant of the motion on the ground of the constitutionality of the statute, but he made no proffer of the evidence he sought to introduce except the vague comment that it was "about [the victim's] sexual background in New Jersey." More important, he made no attempt whatsoever to introduce the evidence at the trial by way of proffer out of the hearing of the jury, or otherwise. Maryland Rule 1085 requires that, normally, on appeal we not decide "any point or question which does not plainly appear by the record to have been tried and decided by the lower court. . . ." As we have indicated, the grant of the motion *in limine* did not preserve error, if error there were, and there was nothing relative to the evidence the defense

desired to introduce presented to the court for a ruling at trial. We said in *Lapelosa v. Cruze, supra,* at 207:

> "There is no exception to the ... rule, which requires the recording of an objection in the trial below, where the question of admissibility of evidence has previously been raised in a pre-trial motion in *limine.*"

We adhere to that view.

## III.

Funkhouser alleges that the court erred in denying his motion for judgment of acquittal as to the second count charging rape in the first degree. The basis of his claim is that he did not have vaginal intercourse with the victim, and, he asserts, such intercourse is a necessary element of the offense by mandate of the statute. The argument completely disregards the law concerning principals in the second degree, which we have set out fully in part I of this opinion. Of course, vaginal intercourse is a necessary element of rape in the first degree, but here, as we have indicated, that element was supplied by Weatherbee. Again we point out that there was evidence, which, if believed, showed that Weatherbee engaged in vaginal intercourse with the victim by force, against her will and without her consent, aided and abetted by Funkhouser. This was enough for Funkhouser to be guilty of rape in the first degree. His participation as aider and abettor was all that was required to make him as responsible as was the actual perpetrator of the crime, there being no practical distinction between Weatherbee as a principal in the first degree and Funkhouser as a principal in the second degree. Nor was it necessary that Funkhouser be specifically charged as a principal in the second degree.[8]

8. Funkhouser could have been charged in the general form authorized by Md. Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.) Art. 27, § 461 B (a), that he, on a certain day, in the county aforesaid "did unlawfully commit a rape ... upon [the victim] in violation of Article 27, Section 462, of the

The denial of the motion for judgment of acquittal as to the second count was not erroneous.

## IV.

The court did not abuse its discretion in refusing the request by defense counsel at the beginning of the second day of trial to issue a subpoena for a police officer. Md. Rule 742b requires that a request for the issuance of a summons be filed at least three days before trial and authorizes the court to shorten the time "[f]or good cause shown. . . ." The court below made abundantly clear that good cause had not been shown for the issuance of the summons — "you haven't given me any reason why I should bring [the officer] in." Procedural rules must be observed. *See Dimery v. State,* 274 Md. 661, 668-677, 338 A.2d 56 (1975), *cert. denied,* 423 U.S. 1074 (1976). In any event, the court stated that the testimony sought from the officer would not be admissible. It seems that the defense desired to impeach the victim's testimony by a prior inconsistent statement she had made to the officer. But counsel had not laid the proper foundation upon cross-examination of the victim. *See Sanders v. State,* 1 Md. App. 630, 640-641, 232 A.2d 555 (1967). *See also Darby v. State,* 47 Md. App. 1, 7, 421 A.2d 108 (1980), *cert. denied,* 289 Md. 734 (1981).

## V.

Funkhouser claims that the court erred in denying two motions for mistrial made by him. In determining that there was no reversible error on these claims, we give due regard to the principle that the grant or denial of mistrial is in the sound discretion of the trial judge, *see Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974), and to the doctrine that

---

Annotated Code of Maryland; contrary to the the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State."

If this general form or one substantially to that effect is used, the defendant is entitled to a bill of particulars specifically setting forth the allegations against him. § 461 B (b).

discretionary rulings of the trial judge carry a presumption of validity, *Mathias v. State,* 284 Md. 22, 28, 394 A.2d 292 (1978), *cert. denied,* 441 U.S. 906 (1979).

### (a)

Upon swearing the prospective jurors on voir dire, the judge informed them that the case involved an alleged rape. She then made inquiry of them as is usual in voir dire examination, including this question:

> "Has any member of this prospective jury panel, or any member of your family or close personal friend, who has ever been interrogated for, arrested for, a witness to, a victim of, or convicted of a crime of violence?"

Seven persons came forward, and the information they gave was duly considered and acted upon by the judge. Immediately before the jury was selected, the judge asked:

> "Does anyone have any reason why he or she could not sit on a panel in this case and render a fair and impartial verdict based solely on the evidence, for any reason that I have not asked."

There was no affirmative response. Each counsel expressed satisfaction with the voir dire.

About two hours after the jury retired to deliberate, the judge, in open court, informed Funkhouser and counsel that she had received a note over the signature of the jury foreman which read:

> "Your Honor, During the course of discussion among the jurists, one jurist said at age 13 she was afraid about being raped by three individuals. In view of your opening remarks to the potential jurists, we feel you should be aware of this disclosure."

Defense counsel moved for a mistrial. He opposed any other interference by the court with the deliberations of the jury.

The court denied the motion for a mistrial. It explained:

"The court interprets this [note] as meaning there is one juror, apparently, as so many jurors often do, rely on their own personal experiences day to day basis, in trying to make a determination, a deliberation, in any case. Jurors often do this. It is only natural, it is human nature that one would rely on one's own education, their social background, their own personal experiences in adjudicating a case. The court finds that to be normal. Also, the court feels in the voir dire questions, the court never asked whether there was anyone out there on the prospective jury panel that was afraid of being raped. Since I never asked that question, there would be no reason to believe that this juror had given any kind of incorrect or false answer. Furthermore, the court asked, at the end, if there was any reason why, which I have already asked, why he or she could not sit and render a fair and impartial verdict based solely on the evidence in this case, and I had no affirmative response whatsoever. Therefore, the court is of the opinion that all of the jurors who are back there deliberating in this particular case, have no reason at all to believe that they could not sit and render a fair and impartial verdict in this case, therefore, your motion for a mistrial will be denied. The court finds no prejudice with respect to this note, it appears to be information only. I will therefore respond by saying, 'Thank you for the information, you may continue deliberations', and I will instruct the bailiff to deliver this to them."

We think that the court's appraisal of the situation was sound. We make the further observation that because a person at one time may have been afraid of being raped does not connote that the person was a "victim" of a rape. Many persons today are "afraid" that in their absence their home will be burglarized, but that fear does not make them the

"victim" of a burglary. Defense counsel was of the opinion that the "note reflects a dishonesty in one of the jurors from not answering the voir dire questions. . . ." In the circumstances, we see nothing nefarious or improper on the part of the juror concerned because that juror did not come forward in response to either of the above voir dire questions as posed. We find that there was no abuse of judicial discretion in the denial of this motion for a mistrial.

### (b)

Funkhouser claims that the court erred in denying his motion for a mistrial based upon certain remarks of the prosecutor during closing argument. He characterizes these remarks as improper comment on his failure to testify. We do not see it that way.

Two statements of the prosecutor are referred to by Funkhouser:

> "We have presented all the evidence to you. What about the defendant's case? Interesting. Not one bit of evidence is offered as far as the rape itself or the kidnapping. . . ."

And:

> "Five witnesses are called. None speak of the rape or the kidnapping. All they talk about is a fight that night, a fight at the house. . . ."

We note that later the prosecutor said:

> "You have to take a look at [what happened in the house] momentarily to decide whether the credibility of the witnesses for the defense had any value, because that is all they talked about was the incident at the house."

Defense counsel objected at the time the first statement was made. The objection was sustained and the court refused counsel's request to approach the bench. The second and third statements came in without objection. At the end of the

State's argument, at the bench, defense counsel moved for a mistrial "based on the state's reference to the defendant not taking the stand." The court opined: "He didn't say that," and after a short discussion, denied the motion.

Assuming for decision, but not deciding, that proper challenge was made, we see no abuse of discretion in the denial of the mistrial. The court had made clear in its instructions to the jury Funkhouser's right not to testify:

> "In this particular case, you may recall, Mr. Funkhouser did not take the witness stand. He has an absolute right not to take the witness stand, and you are not to hold this against him in any way because the burden of proof is on the state."

In the light of this caution, we agree with the judge that the prosecutor's remarks are not to be deemed as reflecting on the failure of Funkhouser to testify. The thrust of the remarks was directed toward the lack of evidence rather than pointed directly at the failure of the accused to testify. A prosecutor should not be precluded from making fair comment on the entire evidence; not every neutral or indirect reference that the State makes which implicitly refers to a defendant's silence is improper comment. *See Johnson v. State,* 9 Md. App. 327, 334, 264 A.2d 280, *cert. denied,* 258 Md. 728 (1970); *Laws v. State,* 7 Md. App. 84, 88, 253 A.2d 780 (1969), *cert. denied,* 256 Md. 746 (1970); *Grace v. State,* 6 Md. App. 520, 522, 252 A.2d 297, *cert. denied,* 256 Md. 745 (1969).

There was no abuse of discretion in the denial of this motion for a mistrial.

## VI.

Funkhouser ascribes another error to the trial judge. After the jury had been deliberating some three and a quarter hours, the foreman sent a note to the judge, reading: "We would like to know the definition of aiding and abetting on First Degree Rape." Defense counsel was opposed "to any

tampering with the jury once it has been instructed. . . . The jury instructions given were clear, were proper instructions, and I object." He would not agree to having the original instruction on aiding and abetting re-read to the jury. He had no objection to the court's refusing "to reinstruct the jury on the crime of first degree rape, aiding and abetting. . . ." The court sent a message to the jury to "keep working."

Fifteen minutes later the jury sent the court another note: "We would like to hear the judge's charge to the jury aiding and abetting in First Degree Rape." We think that it is clear the defense counsel objected to any further instruction of the jury — "what we are really getting into is the Allen charge. . . . I think it is a very dangerous field to tamper with a jury once they have retired after a trial and instructions." The judge gave him a choice: "You may have the court reporter read back the original instruction or you may elect to have the judge reinstruct orally." Defense counsel chose the former. The reporter read the instructions previously given concerning the crime of first degree rape and "the concept of aiding and abetting." The jury returned to the jury room and rendered its verdicts three hours and fifteen minutes later.

Funkhouser does not now challenge the content of the re-read instructions. He concedes that what was done did not amount to the "traditional 'Allen' charge" and that the jury requested the further instruction. He urges, however, that "it had the effect of pressuring the jury into reaching an agreement and unduly highlighting one aspect of the Court's instruction to the Jury." We believe that neither of these conclusions is warranted by the circumstances. What the court gave the jury at its repeated request can in no way be likened to an Allen charge. *See Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1977); *Kelley v. State,* 270 Md. 139, 310 A.2d 538 (1973); *Smoot v. State,* 31 Md. App. 138, 355 A.2d 495 (1976). Reinstruction was within the discretion of the trial court, and the reinstruction in the exact words of the original instruction, was not ambiguous, misleading, or confusing. *See Battle v. State,* 287 Md. 675, 684-685, 414

A.2d 1266 (1980). There was no abuse of discretion. *See Veney v. State*, 251 Md. 159, 172-173, 246 A.2d 608, *cert. denied*, 394 U.S. 948 (1969).

*Judgments affirmed.*
*Appellant to pay costs.*[9]

---

**9.** Funkhouser was sentenced on the rape conviction to the jurisdiction of the Division of Correction for a period of six years. The court merged the conviction of assault and battery and the conviction of false imprisonment into the conviction of rape in the first degree.