GLADYS L. GHIZ, administratrix, *vs.* DOROTHY WANTMAN.

Suffolk.   January 8, 9, 1958. — April 18, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Motor vehicle, Contributory. *Proximate Cause. Conscious Suffering.*

A conclusion that the owner of an automobile having a "semi-automatic transmission," while sitting in its front seat next to the operator's seat, negligently caused the automobile to back up suddenly and strike its operator after the operator had backed it up to an air pump near a fence in a gas station, had parked it on a slight incline, leaving it in gear with its engine idling and its hand brake off, and had gone to its rear was justified on evidence warranting findings that for an interval after the operator went to its rear the automobile remained stationary and then moved slightly backward, whereupon the owner attempted to put her foot on the brake pedal but pressed the throttle instead, and that the automobile, with a "roar" of its engine, suddenly went back fast with such force that it not only struck down the operator but broke the fence and bent the iron post of the air pump.  [418–419]

Evidence merely that the operator of an automobile having a "semi-automatic transmission" parked it on a slight incline and then left it in gear with its motor idling and its hand brake off when he got out of it and went to its rear would not have permitted a ruling as matter of law that negligence on his part contributed to injuries he received when the owner of the automobile, sitting in its front seat, negligently caused it to back up suddenly and strike him by pressing the throttle instead of the brake pedal.  [419]

Evidence that a person struck down by an automobile moaned, moved his head and tried to raise it, and "just mumbled" some incomprehensible words before he died within an hour after the accident would not have warranted a finding of conscious suffering on his part.  [419]

TORT.   Writ in the Municipal Court of the City of Boston dated May 9, 1956.

Upon removal to the Superior Court, the action was tried before *Dowd,* J.

In this court the case was argued before *Wilkins,* C.J., *Ronan, Williams, Counihan & Cutter,* JJ., and afterwards was submitted on briefs to all the Justices.

*Michael T. Prendergast,* for the defendant.

*Charles W. Lavers,* for the plaintiff.

WILLIAMS, J.   This is an action of tort by the adminis-tratrix of the estate of Michael C. Ghiz to recover for his death and conscious suffering resulting from being struck by the defendant's automobile.   The case was tried on counts 2 and 3 of the plaintiff's declaration which alleged respec-tively that the death and conscious suffering were caused by the defendant's negligence.

Evidence presented by the plaintiff was substantially as follows.   The decedent, a man forty-seven years of age, was employed by the defendant as a handy man at her home in Brookline.   On the afternoon of March 5, 1956, she and he drove in her automobile, a 1951 DeSoto convertible coupe, to Roxbury.   Since the defendant was recovering from a surgical operation, the decedent operated the automobile and she sat on the front seat beside him.   They carried an old bicycle which she had given him in the storage compart-ment at the rear of the automobile.   At about 5:20 P.M. they stopped at a so called "gas station" on South Hunting-ton Avenue to pump air into the bicycle tires.   The air pump was near a fence at the north end of the station yard and the decedent backed the automobile to a point near the pump.   The yard sloped slightly toward the fence.   The decedent parked the automobile and got out on the left side, leaving the automobile in gear and the engine running or idling.   He went around to the back and had lifted the cover of the storage compartment when the automobile rolled backward crushing him against the fence.

One D'Amico, the proprietor of the gas station, and Rose, his assistant, were in a building known as a lubritorium, about twenty feet from the air pump.   Rose heard an engine "roar," looked out, saw "that the car was going back-wards" and in a "split second" heard a crash.   He went out and over to the defendant who was sitting in the front seat of the automobile on the right hand side, partially leaning against the door.   The decedent was lying with his legs under the automobile between the rear bumper and the

fence. The iron post which carried the air pump was bent almost flat. Rose asked the defendant to pull the automobile up, which she did but only for a distance of two feet because the iron post hooked onto the automobile.

D'Amico who had heard the crash also went out into the yard. He saw the defendant sitting in the front seat "in such a way, in kind of a sideway position with her back toward the right side door, front door, at an angle." The automobile was about two and one half feet from the fence which was constructed of three-quarter inch boards. Several boards were broken and the fence bent backwards. The decedent was bleeding from nose and mouth and moaning. D'Amico saw him "trying to raise his head." He moved his head and "just mumbled some words, but you couldn't make them out." D'Amico told him to keep still, and put some coats over him. The decedent was taken in an ambulance to the Peter Bent Brigham Hospital where he was admitted at 5:25 P.M. He was in a cyanotic and comatose condition. No blood pressure was obtainable; there were gurgling sounds in his chest and blood mucous was coming from his mouth. He "stopped breathing" at 6 P.M.

The defendant told a police officer at the scene of the accident that "the car all of a sudden shot backwards and struck Mr. Ghiz," and "that the car started abruptly with a great deal of force backwards." At her home that evening she said to another officer that "He [the decedent] got out of the left side and went to the rear, and about a minute later the car moved back about a foot, and it seemed to move back fast and suddenly. The engine was idling at the time. When the car first started to move backwards, I heard a moan from the rear of the car. I tried to put my foot on the brake, but the car had already stopped. It felt as if it had struck something, as though it hit the pump. . . . The car seemed to me to be creeping backwards. I was looking out the window when I realized it was moving, and I heard the moan." To an investigator for the registry of motor vehicles she said that the decedent "had left the car

Ghiz *v.* Wantman.

in gear and that the hand brake . . . had not been applied; that he got out of the car at the left side, went to the rear of the car to put air into the tire, and that she was looking out the window of the car and then noticed that the car was in motion. She made an attempt to apply the brake, but the car had stopped before she could do so."

The defendant rested at the conclusion of the plaintiff's evidence. She excepted to the refusal by the judge to direct a verdict for the defendant on the count for death, and the jury returned a verdict for the plaintiff on that count. The judge, subject to the plaintiff's exception, directed a verdict for the defendant on the count for conscious suffering. These with other exceptions pertaining to rulings on evidence are presented in a consolidated bill of exceptions.

The evidence warranted a finding that for an interval after the decedent went to the rear of the automobile it remained stationary, then moved slightly backward, and suddenly went back fast with such force that it not only struck down the decedent but broke the fence and bent the iron post. Considered with the evidence of the roar from the engine it could be found that the cause of the final backward movement was something more than the slight down grade of the yard. It is, we think, a matter of common knowledge that a sudden application of gas to an automobile engine will, if in sufficient volume, cause a "roar" from the engine. The jury would be warranted in finding that in this case the "roar" heard by Rose came from the engine of the defendant's automobile and was caused by such an application. The defendant admitted that when the automobile started to move she attempted to put her foot on the brake pedal which we may assume was located to her left and convenient to the ordinary position of the operator's right foot. It could be found that in reaching with her foot to her left she pressed the throttle instead of the brake and caused a sudden flow of gas to the engine.

There was evidence that after the accident the mechanism of the automobile and the brakes were in good condition. The automobile according to expert testimony had a "semi-

automatic transmission." It had a fluid connection between engine and transmission which, although permitting the automobile to remain stationary while in gear with the engine running, would transmit power to the wheels if the flow of gas was accelerated.

A finding that the defendant caused the sudden backing of the automobile would depend not on speculation and conjecture but on a reasonable inference from the facts in evidence. See *Eaton* v. *S. S. Pierce Co.* 288 Mass. 323; *Thomas* v. *Spinney*, 310 Mass. 749; *Marshall* v. *Carter*, 301 Mass. 372.

If the jury were satisfied that the act of the defendant was the immediate cause of the injuries to the decedent they could find that the act constituted negligence.

It could not have been ruled as matter of law that negligence of the decedent was a contributing cause of his injuries. Assuming that the jury found that he left the automobile as described by the defendant they could also find that the act of the defendant thereafter intervened as an independent and the dominant cause of the decedent's injuries. In the opinion of a majority of the court there was no error in submitting count 2 to the jury.

Nor was there error in directing a verdict for the defendant on count 3. As to that count the case must be classified with *Kearney* v. *Boston & Worcester Railroad*, 9 Cush. 108, *Mears* v. *Boston & Maine Railroad*, 163 Mass. 150, *Royal Indemnity Co.* v. *Pittsfield Electric Co.* 293 Mass. 4, *Allicia* v. *Boston, Revere Beach & Lynn Railroad*, 294 Mass. 488, *Melnik* v. *Perwak*, 295 Mass. 512, and *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 613. It is a matter of speculation whether the movements of head and lips and the moans and groans were the result of conscious effort and suffering. Evidence is lacking which would serve to create an issue for a jury. See *Battany* v. *Wall*, 232 Mass. 138, 141; *Nadeau* v. *Taunton*, 247 Mass. 104, 106; *Isaacson* v. *Boston, Worcester & New York Street Railway*, 278 Mass. 378, 391–392; *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 273–274. The respective exceptions of the parties relating to the exclusion

of evidence require no discussion, as none was excluded which would affect our conclusion as to the correctness of the above rulings.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions overruled.*