Markell *v.* Gahm.

GERTRUDE W. MARKELL, executrix, *vs.* BERNICE B. GAHM
& another.

Middlesex.    November 10, 1961. — January 23, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Negligence,* Motor vehicle, Contributory.  *Conscious Suffering.   Practice,
Civil,* Interrogatories; Exceptions: whether error harmful.  *Evidence,*
Interrogatories.   *Error,* Whether error harmful.

Evidence in an action for death arising from a collision between the auto-
mobile of the decedent as it was proceeding southerly through an inter-
section of two streets and the defendant's automobile as it was pro-
ceeding easterly through the intersection warranted findings that the
decedent's automobile entered the intersection first and was emerging
therefrom when its right rear was struck hard by the front of the
defendant's automobile, and that the defendant, who was well acquainted
with the intersection and first saw the decedent's automobile when it was
at least twenty-eight feet north thereof, was negligent; and a finding
that the decedent was guilty of contributory negligence was not required
even though his automobile was "going fast" when struck by the de-
fendant's automobile.   [470]

Evidence that an operator of an automobile thrown out of it and into a
gutter in a collision with another automobile "tried to get up," was
"trying to talk," and was "quiet" after he was told to be quiet, that,
while being taken to a hospital, he "moved and groaned," and that at
the hospital he "tried to prevent" the removal of his wallet warranted a
finding of conscious suffering on his part before he died as a result of
the accident.   [470–471]

At the trial of an action arising out of an automobile accident at which
the plaintiff read interrogatories to and answers by the defendant per-
taining to how the accident happened, there was error in the exclusion,
when subsequently offered by the defendant, of some of the "other in-
terrogatories and answers bearing upon the issue of liability," but such
error was not shown by the record to have been prejudicial to the
defendant.   [471]

TORT.   Writ in the Superior Court dated December 12,
1958.

The action was tried before *Paquet,* J.

*David H. Fulton,* for the defendants.

*Jules E. Angoff,* for the plaintiff.

WHITTEMORE, J. This bill of exceptions relates to the liability of the defendant Bernice B. Gahm (Gahm) for the injury and consequent death of the plaintiff's testator (Markell) in a collision in the intersection of Cabot and Harvard streets in Newton.

1. There was no error in denying the motion for a directed verdict on the count for death. The bill of exceptions shows evidence of these facts. Gahm was driving a Lincoln sedan easterly on Cabot Street; Markell was driving his Cadillac convertible southerly on Harvard Street. The collision, judging from tire marks as shown in photographs, and Gahm's testimony, occurred a little to the southwest of the midpoint of the intersection. The front of Gahm's Lincoln was in contact with the right rear of Markell's Cadillac. Tire marks ascribable to the Lincoln began twenty-three feet west of the point of collision; at the collision point the marks of one pair of tires abruptly changed course from east to southeast and continued, with a slight curve, for twenty-one feet beyond that point almost to the curb at the southeast corner of the intersection. The marks of another pair of tires, also ascribable to the Lincoln, swung in a wider arc southeasterly from the point of collision. Tire marks ascribable to the Cadillac began just about at the point of collision and were five to six feet in length, veering somewhat easterly from the north-south axis of Harvard Street. Gahm's Lincoln came to rest on Cabot Street, headed south, just outside the intersection, and the tire marks continued to that point. Markell's Cadillac hit and broke a pole in the easterly curb of Harvard Street about twenty-eight feet from the point of collision and came to rest in Harvard Street, a few feet beyond that, also facing south. A photograph warrants the conclusion that the left rear mudguard of the Cadillac hit the pole. Markell was thrown out of the car and into the gutter some ten feet ahead of his car. There is a stop sign on Harvard Street, north of Cabot Street, which governed Markell's approach to the intersection. This is twenty-eight feet north of the inner edge of the northerly sidewalk

in Cabot Street. Gahm testified that she was well acquainted with the intersection; that she saw the Cadillac before she reached the intersection; it was going fast; she was going "very slowly"; the Cadillac was the other side of the stop sign when she first saw it and it did not stop; "the rear of the Markell car probably attached itself to the front of her car and swung her around." She saw "a sort of a surging-up, almost . . . a flying situation . . . the car went on bouncing, . . . it hit the pole and finally came to a stop."

The jury were warranted in concluding that Markell's car entered the intersection first and was emerging from it when it was hit by the Lincoln. The jury could have inferred that had Gahm had her car adequately under control and had she continued to observe the Cadillac from the time she first saw it, and had she been proceeding at a reasonable speed, she would have stopped her car before the collision. The jury could of course disregard her testimony of the speed of the automobiles and that Markell had not stopped. Gahm's negligence could reasonably be inferred.

Markell's negligence is not shown as a matter of law. We disagree with the defendants' contention that it is conclusively shown that the Cadillac's course after the collision is ascribable to its excessive speed in approaching and traversing the intersection and not in significant part to the thrust given it by the Lincoln. We assume that it was reasonable to conclude that the Cadillac, when hit, was "going fast," but the reasonable possibility is not excluded that it had recently been accelerated to escape from the intersection and from the path of the approaching Lincoln.

2. It was not error to deny a directed verdict on the count for conscious suffering. Markell, while in the gutter, was observed trying to raise himself on both hands. "He was trying to talk, but it was garbled and there was nothing that you could understand." At the hospital, when the nurse and the officer reached for his wallet he "sort of rolled over and tried to prevent them . . . using his left hand." On the way to the hospital the man "moved and

Markell *v.* Gahm.

groaned.'' Markell ''tried to get up'' from the gutter. '' 'We just told him to lie quiet and he would be all right . . ..' [H]e was quiet after that.'' When lifted up he ''mumbled something.'' Although the case is at the verge, the jury could have inferred from this evidence that Markell was conscious for a time after the accident. *Isaacson* v. *Boston, Worcester & N. Y. St. Ry.* 278 Mass. 378, 391–392. *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 273–274. It could have been inferred that Markell heard and responded to the direction to be quiet and that he was aware of the attempt to take his wallet. In these respects the evidence goes a little further than that in *Ghiz* v. *Wantman,* 337 Mass. 415, 419, which was held insufficient to require the submission of the issue to the jury.

3. The plaintiff read certain of Gahm's answers to interrogatories, and, apparently, the questions themselves, in an unsuccessful attempt to ''refresh her memory.'' The defendants then offered '' '. . . all the other interrogatories and answers bearing upon the issue of liability.' '' Several were admitted; two were excluded. The subject matter of the interrogatories used by plaintiff was how the accident happened. The excluded interrogatories, and the answers thereto, related to that subject and they should have been admitted. *Falzone* v. *Burgoyne,* 317 Mass. 493, 497. *DiAngelo* v. *United Mkts. Inc.* 319 Mass. 143, 146. The defendant, however, points to no reversible error. The only prejudice asserted is that the answers tended to show that Gahm had consistently held to one story with no recent invention. There is nothing in this. The answers were consistent with parts and inconsistent with other parts of Gahm's testimony, which at best, with or without the answers, was in important aspects uncertain and inconclusive.

*Exceptions overruled.*