## MARY ALEXANDER McCLURE *v.* WILLIAM P. McCLURE

[No. 555, September Term, 1971.]

*Decided April 21, 1972.*

The cause was argued before MURPHY, C. J., MORTON and CARTER, JJ.

*Jackson Brodsky,* with whom was *John R. Hansen* on the brief, for appellant.

*George J. Goldsborough* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

On April 12, 1962 appellant (wife) and appellee (husband) entered into a detailed separation agreement which provided among other things that the wife was to have custody of the parties' two children, Helen, then age 6, and Lynn, then age 10; that the husband was to pay $27,000.00 annually for the "support and maintenance" of the wife and children and, in addition, would pay "the amount of any increased costs of school charges over school cost incurred by each of the children for the school year 1961-1962"; that in the event the wife remarried, the husband was to pay the wife $9,600.00 annually "for the support and maintenance of the children plus the entire cost of their schooling and camp in order to attend a school or camp of the Wife's choosing"; that the $9,600.00 sum payable for the children's support and maintenance in the event the wife remarried would be decreased by 50% "as each child becomes deceased, marries, self supporting, or reaches the age of twenty-one (21) years, except that if the child concerned is then attending college upon reaching her twenty-first birthday,

the contribution for the support of that child shall continue until she graduates or concludes her college studies." The agreement contained a provision that the amounts paid "for support and maintenance of the Wife and children (including any amounts paid for camp and for tuition for the children's schooling)" not exceed 50% of the husband's gross income. Further provision was made in the agreement governing the husband's obligations "for the support and maintenance of the Wife and children together with tuition costs for school and their camp charges" in the event such payments exceeded 50% of the husband's gross income.

Both Helen and Lynn were attending private day schools at the time the agreement was concluded. The parties were divorced on July 16, 1962; shortly thereafter, the wife remarried and the husband's obligation to pay $9,600.00 annually for the "support and maintenance of the children plus the entire cost of their schooling" became operative. Pursuant to that provision of the agreement the husband paid $9,600.00 annually for the children's support and maintenance for seven years; in addition, during this seven-year period, he paid all charges for the children's private day schooling, which included some expense for lunches provided the children by the schools. In 1969, the children began to attend private boarding schools. The husband continued to pay $9,600.00 annually for the children's support and maintenance. He took the position, however, that his additional obligation under the agreement to pay the "entire cost" of the children's "schooling" did not include room and board charges at the boarding schools, nor did it include such items as transportation expenses or the cost of uniforms; he refused to pay these items on the ground that his $9,600.00 annual support and maintenance payment for the children already covered them. Claiming that the husband's interpretation of the agreement constituted a clear violation of his obligation to pay the "entire cost" of the children's "schooling," the wife sought specific performance of the agreement and a judgment

for allegedly past due schooling expenses paid by her in the amount of $7,009.53.

The Chancellor, after hearing testimony from the parties and reviewing the agreement, concluded that while the agreement was clear and unambiguous in most of its provisions, the term "schooling," as used in the provision requiring that the husband pay "the entire cost of * * * [the children's] schooling," required interpretation. The Chancellor noted that the terms "schooling," "school charges," "tuition for the children's schooling," and "tuition costs for school" were variously used in the agreement without definition. Considering the term "schooling" in light of the entire agreement, the Chancellor concluded that the "entire cost" of the children's "schooling," which the husband was obligated to pay, included "full tuition, all laboratory and other fees, athletic or special concerts, special theater fees, anything that is part of the college program and transportation not to exceed 2,000 miles in any one twelve-month period."

On appeal, the wife claims that the agreement required no interpretation; that it was clear and unequivocal in all its terms, including that requiring that the husband pay the "entire cost" of the children's "schooling." She maintains that the Chancellor in effect modified the agreement by reducing the sums payable for the support and maintenance of the children without finding that such reduction was in the best interests of the children as required by Maryland Code, Article 16, Section 28. She claims that in any event the Chancellor was clearly wrong in holding that the "entire cost" of the children's "schooling" did not encompass the cost of room, board, transportation, and all other expenses created by school attendance. She maintains that the husband's obligation to pay the entire cost of the children's schooling came into play only upon her remarriage, at which time his financial obligation was reduced from $27,000.00 annually to $9,600.00 annually; that even though the children were away at school, the various expenses incurred by her in connection with medical and dental expenses, recreation,

travel, allowance, clothing, and sundries, together with a portion of the cost of maintaining the family home, more than consumed the basic support and maintenance allowance for each child and that this was readily apparent to the parties when the agreement was signed. She claims that the "bankruptcy of appellee's convoluted logic" is immediately apparent when the provision of the agreement relating to the payment of camp charges is considered; as to these, she argues that if the parties intended a reduction in the $9,600.00 annual payment for the period that the children were away at camp, they would have spelled out such an understanding in "exquisite detail." In this connection she notes that the husband has always paid the children's summer camp expenses without deductions for meals or similar camp related expenses, and that he so testified at the trial.

A separation agreement being a contract between the parties is subject to the same general rules governing other contracts, and particular questions must be resolved by reference to the particular language of the agreement. *Heinmuller v. Heinmuller,* 257 Md. 672. Thus, where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed. *Devereux v. Berger,* 253 Md. 264; *Pumphrey v. Pumphrey,* 11 Md. App. 287. We agree with the Chancellor's conclusion that it was by no means clear from the agreement just what the parties actually intended would constitute costs payable by the husband as part of the children's "schooling." Considering the agreement as a whole, as we must in this case (see *Pumphrey v. Pumphrey, supra*) and particularly recognizing the interchangeable usage therein of the terms "schooling" costs, "school charges," "tuition for the children's schooling" and "tuition costs for school," we think the husband's obligation to pay "support and maintenance" for the children of $9,600.00 annually (or $400.00 monthly for each child) plus the "entire cost" of the children's "schooling," does not require that he make a separate and additional payment for the chil-

dren's room and board charges while they are living away from home attending boarding school or college.

We recognize that when the separation agreement was signed by the parties in 1962, the children were then quite young and the actual expense for their support and maintenance was less than would likely be incurred as they grew older and left home to attend boarding school or college. But if it was the understanding of the parties, as claimed by the wife, that the cost of the children's "schooling" to be paid by the husband included items of support and maintenance not covered by, additional to, or in duplication of the $9,600.00 annual support and maintenance payment, they failed in our opinion to adequately express that understanding in the agreement. That the husband may have paid the entire summer camp expenses incurred by the children, which included meals and lodging expenses, without deduction from the annual $9,600.00 payment for the children's support and maintenance, does not demonstrate that it was the intention of the parties, spelled out in the agreement, that the children's "schooling" costs would include room and board, transportation, and all other expenses created by attending boarding school or college, without deduction from the annual $9,600.00 support and maintenance allowance. It may be, as the wife suggests, that the $9,600.00 payment is insufficient in the present circumstances to provide adequately for the children's support and maintenance. If that be so, and the best interests of the children are shown to require it, an increase in the basic support and maintenance allowance may be sought under Maryland Code, Article 16, Section 28, the merits of the question to be resolved in light of the children's needs, their station in life, and the financial circumstances of the children's father. See *Wagshal v. Wagshal,* 249 Md. 143; *Fainberg v. Rosen,* 12 Md. App. 359. As we read the agreement, however, the wife is not entitled to payment from the husband for room and board charged by the college or private boarding school as part of the "entire cost" of "schooling." In so concluding, we do not hold

that room and board are not, by common meaning and understanding, a part of the cost of sending a child to boarding school or college. We hold only that under the terms of the separation agreement in this case, room and board charges were not encompassed within the provision requiring the husband to pay, in addition to child support and maintenance, the "entire cost" of the children's "schooling." We find the cases relied upon by the parties in support of their respective positions of little assistance.[1] There, as here, resolution of the question of what constitutes schooling costs turned upon the facts and circumstances present in the case.

With respect to the costs incurred by the children for transportation between their home and boarding school and college, the Chancellor found an ambiguity to exist in the agreement because the parties failed to include any limitation on the distance from home to the boarding school or college which the children were authorized to attend. He believed it a reasonable interpretation of the agreement to require the husband to pay transportation costs between home and school as a cost of the children's "schooling," limited to four round trips per year, per child, not to exceed five hundred miles per round trip, or 2,000 miles per year.

We think the Chancellor was in error in so interpreting the agreement. Although the question is not directly involved in this appeal, we find no ambiguity in the agreement by reason of the absence of any limitation on the geographic area within which the children would be permitted to attend boarding school or college. The wife was expressly authorized by the agreement to select the school to be attended by the children; distance from home was not made a factor in the agreement, and we think the husband would be obliged to pay the costs of "schooling," as herein interpreted, no matter where the boarding school or college was located. But we do not think that

---

1. See *Wooddy v. Wooddy*, 258 Md. 224; *Sakezzie v. Utah State Indian Affairs Commission*, 215 F. Supp. 12 (D. C. Utah).

any of the costs of transportation back and forth between home and college or boarding school constitute, *under the agreement,* one of the costs of the children's "schooling" to be paid by the husband. We think such transportation costs fall within the basic $9,600.00 annual support and maintenance allowance for the children.

We thus conclude that the separation agreement in this case requires the husband to pay, in addition to the $9,600.00 annual support and maintenance allowance, the "entire cost" of the children's "schooling" which embraces, as found by the Chancellor, full tuition costs and other charges levied by the school or college as part of its academic, athletic, or social program.[2]

> *Case remanded for the passage of a modified decree in accordance with this opinion; costs to be paid by appellee.*

---

2. We have considered but find no merit in the husband's motion to dismiss the wife's appeal. The motion was made on the basis that the appeal was not filed within the time prescribed by Maryland Rule 1012. The record reveals that the decree appealed from was filed on October 28, 1971 and that the wife filed her order for appeal on November 2, 1971. The husband's reliance on August 16, 1971, the date of the Chancellor's opinion, as the controlling date is misplaced. The requirement that orders and decrees in equity must be in writing and signed by the judge may not ordinarily be waived by the parties' failure to demand a written decree. We hold that the controlling date for appeal purposes is the date of the filing of the court's written decree. See *Tvardek v. Tvardek,* 257 Md. 88; *Kennedy v. Foley, Receiver,* 240 Md. 615.