BETTIE RUTH ORY, PERSONAL REPRESENTATIVE OF THE ESTATE OF VALERIE JAMES ORY, JR. *v.* ANTHONY LIBERSKY, PERSONAL REPRESENTATIVE OF THE ESTATE OF KENNETH WESLEY HOLDEN ET AL.

[No. 1261, September Term, 1977.]

*Decided July 17, 1978.*

The cause was argued before MOORE, LOWE and MASON, JJ.

*William A. Franch,* with whom were *Goldsborough, Franch & Collett* on the brief, for appellant.

*David M. Williams,* with whom were *James J. White, III,* and *Alexander P. Rasin, III,* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

We are here presented with an appeal and a cross-appeal in a wrongful death action in which liability was admitted and the jury awarded damages of $50,000 to each of three minor children, and $10,000 to the estate of the decedent for conscious pain and suffering and for medical and funeral expenses. The defendant below (appellant and cross-appellee, Bettie Ruth Ory, Personal Representative) moved for a new trial, arguing prejudicial error in permitting the jury to consider: (a) contributions from the father toward the cost of the children's higher education as evidence of economic loss and (b) the entitlement of the estate to damages for conscious pain and suffering. The trial court granted the motion with respect to conscious pain and suffering, holding that the evidence on that issue was insufficient to constitute a jury question.[1]

The central questions raised on this appeal are the two issues which were involved in the motion for a new trial. There are also related subsidiary questions pertaining to the trial court's denial of two motions *in limine* filed by appellant; and claims of error in permitting expert testimony based upon an allegedly improper hypothetical question and in the jury's rendition of lump sum verdicts for the children in identical amounts. The appellee, Anthony Libersky, by a cross-appeal, claims that the court erred in finding no evidence of conscious pain and suffering, and in granting summary judgment for the appellant on that issue. Finding no error, we affirm.

# I

On Christmas eve 1975, at approximately 8:30 p.m., there was a head-on collision between two automobiles on Maryland Route 213, approximately one mile south of Chestertown in Kent County. Valerie James Ory, Jr., who negligently crossed into the opposite lane causing the fatal accident, was killed

---

1. As disclosed *infra,* a new trial did not take place. The personal representative of the deceased father filed a motion for summary judgment, upon which the trial court awarded judgment to the estate for the special damages but held against the estate on the claim for damages for conscious pain and suffering.

instantly. Kenneth Wesley Holden, operator of the other vehicle, was pinned behind the wheel, mortally injured. He was taken to the Kent and Queen Anne's Hospital by the Kent and Queen Anne's Rescue Squad. All appropriate emergency treatment, including cardiac massage, was administered but he was pronounced dead at 9:30 p.m.

At the time of his death, Mr. Holden was 38 years of age and the father of three children — a daughter Linda, then 14, and two sons, Martin and Gary, then 12 and 10, respectively. He and the children's mother, Mary T. McClements, had been divorced in 1971 after ten years of marriage and she received custody pursuant to the terms of a separation agreement and subsequent decree. She thereafter remarried. The uncontradicted testimony disclosed an unusually amicable relationship between Mr. Holden and his former spouse and her second husband, and close, warm, and constant contact between the deceased and his children.

With respect to his personal history, the evidence revealed that Kenneth Holden grew up on a farm and his formal education terminated at age 16. At 22, he married Mary, then 19 and a high school graduate. In the early years of their marriage, he was a farmer. Later he became a farm equipment mechanic and at the time of his death was employed by a farm implement dealership at $3.75 per hour. His life expectancy was 33.2 years.

The declaration filed by appellee Libersky, personal representative of Mr. Holden's estate, sought in count one recovery of damages for conscious pain and suffering, medical and funeral expenses, and property damage to his vehicle, as authorized by Md. Est. & Trusts Code Ann. § 7-401 (1974). Count two asserted a cause of action on behalf of the surviving children, by their mother and next friend, pursuant to Md. Cts. & Jud. Proc. Code Ann. § 3-904 (1974). Appellant filed two motions *in limine* which were heard in open court prior to the trial date. The first attempted to preclude testimony concerning educational expenses of the children beyond high school on the ground that the deceased had no legal obligation to share in the expenses of higher education. The purpose of the second motion was to exclude testimony

concerning conscious pain and suffering on the ground that pretrial depositions of all competent witnesses did not show a sufficient basis for allowing the jury to consider this element of damage. Both motions were denied. Objections to the challenged testimony were reasserted at the trial of the action, and, at the conclusion of all the evidence, instructions precluding consideration of these elements of damages were requested but denied.

The jury was presented with a form of verdict calling for a finding of damages on behalf of the personal representative and on behalf of each of the surviving children by name. Following the return of verdicts in favor of the personal representative and children, appellant moved for a new trial. The court agreed that the question of conscious pain and suffering should not have been submitted to the jury because the evidence was insufficient. The motion was therefore granted as to count one unless appellee filed a remittitur in the amount of $8,048.40 (the amount of the verdict less funeral, hospital and medical expenses of $1,951.60). The motion was denied, however, with respect to the verdicts for the children.

No remittitur was filed. Libersky then moved for summary judgment and filed therewith a formal proffer of the same evidence on the issue of conscious pain and suffering as had been presented at the trial. The court granted summary judgment under count one, awarding Libersky special damages in the amount of $1,951.60, but ordered summary judgment in favor of Ory under the claim for conscious pain and suffering. Ory's appeal and Libersky's cross-appeal were then taken.[2]

---

2. We note from the record that judgment absolute in the amount of $150,000 was entered against Ory on August 24, 1977. By Order of the court dated September 6, 1977, amending the Order of August 24, 1977, a new trial was granted unless the plaintiff filed a remittitur on or before September 22, 1977. Under date of September 15, 1977, Ory's counsel filed an Order for Appeal. The plaintiff moved to strike it on the ground that it was not timely filed and was violative of Md. Rule 605 a. No remittitur was filed as of September 22, 1977. Rather, on September 27, 1977, the plaintiff filed a motion for summary judgment, and, on October 4, 1977, a proffer of evidence in support of the motion. (The proffer was of the evidence received at the trial on the issue of conscious pain and suffering.) At a hearing on October 24, 1977, the court acted upon plaintiff's motion for summary judgment in

## II

The statutory remedy of the three children of Kenneth Holden for the wrongful death of their father derives from Maryland's version of Lord Campbell's Act, Md. Cts. & Jud. Proc. Code Ann. § 3-901 *et seq.* (1974, 1977 Cum.Supp.). Subsections (c) and (d) of § 3-904 are particularly applicable:

> "(c) *Damages to be divided among beneficiaries.* — In an action under this subtitle, damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death. The amount recovered shall be divided among the beneficiaries in shares directed by the verdict.
>
> "(d) *Damages if spouse or minor child dies.* — For the death of a spouse, minor child, *or parent of a minor child, the damages awarded under subsection (c) are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule* but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable." (Emphasis added.)

The jury awards of lump sums in the amount of $50,000 to each of the children are first assailed by appellant on the ground that "it was error to permit evidence of educational

---

the manner indicated in the text. On the same date, the court considered the motion to strike Ory's Order for Appeal and denied the motion. Thereafter, on November 1, 1977, Ory filed another Order for Appeal, stating:

"As all claims have now been adjudicated in this proceeding as a result of Judge Rasin's Order of October 24, 1977, please enter an appeal to the Court of Special Appeals from the judgment entered in this action on August 24, 1977."

Mr. Libersky's Order of Appeal "from the judgment and rulings against him" was filed on November 2, 1977.

There is no Memorandum Opinion in the record pertaining to the trial court's hearing of October 24, 1977 on the motion to strike Ory's Order for Appeal. An appeal at that juncture of the proceedings would have been premature under Md. Rule 605 a, and, although not stricken, the first Order for Appeal appears to have been abandoned in the light of Ory's new Order for Appeal filed November 1, 1977, quoted above. We are satisfied that the appeal and cross-appeal were timely filed.

expenses based on [an] unenforceable separation agreement and without a demonstrated foundation as to the ability, age, and certainty of each child to attend college."

An agreement of separation between the children's mother and the decedent, dated May 11, 1970, provided in paragraph 11 that the father would contribute $15 per week as child support and share the medical expenses until each child attained the age of 21 years. The last sentence of the paragraph further provided:

"The parties hereto further agree that they will share equally in expenses of higher education of any of said three children in the event they desire to continue their education beyond high school."

Pointing to precedents in the field of family law, *Rhoderick v. Rhoderick,* 257 Md. 354, 263 A. 2d 512 (1970), *Wooddy v. Wooddy,* 258 Md. 224, 265 A. 2d 467 (1970), *Kramer v. Kramer,* 26 Md. App. 620, 339 A. 2d 328 (1975), *McClure v. McClure,* 15 Md. App. 226, 289 A. 2d 610 (1972), appellant argues that the obligation of the deceased father was unenforceable, and that any award based upon his assumed contributions to the higher education of his surviving children was entirely speculative. The difficulty we find with appellant's position stems precisely from the fact that this is not a matrimonial cause but a wrongful death action; and we find altogether inapposite the general guiding principles in the cases cited by appellant that a college education is a necessity if the station in life of the infant justifies a college education and the father is able to pay or contribute to the payment for such education. *See Rhoderick v. Rhoderick, supra,* 257 Md. at 367-68, 263 A. 2d at 519. Similarly beside the mark is appellant's contention that the provision for educational expenses in the separation agreement is ambiguous in that the time for termination of the obligation and the types of expenses to be included as "expenses of higher education" are not expressly set forth. *See Kramer v. Kramer, supra; McClure v. McClure, supra.*

In a wrongful death action, the test of the propriety of an award of damages for loss of educational benefits is not the

existence or not of an enforceable legal obligation of the divorced non-custodial parent to contribute to post-high school educational obligations. It is rather the existence or not of a *reasonable expectation* on the part of the surviving child or children of educational benefits they might properly have expected to receive from their deceased father but for his wrongful death. *Strahan v. Webb,* 330 S.W.2d 291 (Ark. 1959) (circumstances indicated that, in natural course of events, father would have contributed, to best of his ability, to children's college education expenses); *see Hutzell v. Boyer,* 252 Md. 227, 249 A. 2d 449 (1969); *Baltimore Transit Co. v. State ex rel. Castranda,* 194 Md. 421, 71 A. 2d 442 (1950); *State ex rel. Bowman v. Wooleyhan Transport Co.,* 192 Md. 686, 65 A. 2d 321 (1949); *State ex rel. Strepay v. Cohen,* 166 Md. 682, 172 A. 274 (1934); 25A C.J.S. *Death* § 26 (1).

The real significance of the separation agreement in this case was correctly evaluated by the trial judge in his instructions to the jury when he stated:

> "The separation agreement which is in evidence, and only paragraph 11 concerns the amount of support and contribution for higher education if the children pursue that, is not a binding contract that affects the children. *It is merely a piece of evidence for you to consider as to what the father would have done, or was likely to do, or would probably do for his three children had he lived."* (Emphasis added.)

In addition to the agreement, other evidence of record in this case clearly establishes a jury question on the issue of loss of educational benefits. This evidence includes:

> (1) expert testimony from an economist relating to the cost of a public college education and the deceased's projected earnings;
> (2) testimony of the mother that a savings account had been established for the children's higher education and that both she and the father encouraged the children to aspire to a college education;

(3) testimony of the daughter Linda that she was a member of the honor society at Kent County High School, had definite plans to attend college, and wished ultimately to study law;

(4) testimony of the boys, Martin and Gary, then in only sixth and seventh grades, respectively, that they "hoped" to go to college;

(5) the father's regularity in making support payments and his general disposition to be of fatherly assistance to his children.

We also reject the related contention of the appellant that the evidence must disclose the *certainty* that each child would attend college. Again, matrimonial law precedents are inapposite. *See* Annot., 56 A.L.R.2d 1207 (1957); *Pincus v. Pincus*, 197 A. 2d 854 (D.C. 1964). In such cases, the ability and capacity of a child for higher education may be demonstrated with some certainty in subsequent proceedings. In a wrongful death action, it can only reasonably be required that the evidence at the time of trial be sufficient to show a probability that the children would pursue higher education. We think the evidence in this case met that requirement.

Our determination of this fundamental issue is also dispositive of appellant's contention that a hypothetical question presented to the economic expert improperly elicited a legal interpretation of the separation agreement and was improper because it did not include evidence concerning the type of education each child would "certainly" pursue after high school.

### III

Under well-settled principles of Maryland law relative to the issue of recovery for conscious pain and suffering, it was incumbent upon Libersky, under count one of the declaration, to establish by a preponderance of the evidence (a) that the deceased Ory's negligence was the direct and proximate cause of the accident, (b) that the deceased Holden lived after the accident, and (c) that between the time of the accident and

the time of death, Holden suffered conscious pain. *Tri-State Poultry Cooperative, Inc. v. Carey,* 190 Md. 116, 125, 57 A. 2d 812, 817 (1948). Liability was here admitted and it was uncontroverted that Mr. Holden survived for approximately one hour. The issue which the court decided as a matter of law, adversely to Holden's estate, was whether the deceased suffered conscious pain before he died.

The primary evidence came from the deposition read at trial of Charles Carter, a member of the Kent and Queen Anne's Rescue Squad who, with two other persons, initially responded to the scene of the accident. Carter was the first member of the team to reach Mr. Holden and was the only member who ministered closely to him while he was trapped inside the vehicle. Carter also accompanied the deceased in the ambulance to the hospital. In the course of his deposition, he testified that the victim had sustained a "tear type" wound to the right side of his face, extending "from the chin to about the top of the cheek," and that there was "a large amount of torn loose flesh." In addition, Carter noticed that the victim's left arm was bleeding and was fractured. He believed Mr. Holden might also have sustained a leg wound, but of that he was uncertain "because he was pinned at the time."

Mr. Carter's testimony bearing on the issue of the victim's consciousness and vital signs was as follows:

> "Q From what you could observe, was he conscious?
>
> "A Yes. I would say he was.
>
> "Q During the time that you were in the immediate presence of Mr. Holden, did you hear any sounds or noises coming from his body?
>
> "A Yes. He was breathing rather laborly [sic] and he apparently had swallowed some blood because there was a gurgling sound in breathing, and he made no moans as such, other than this common gasping sound for breath, which was usually a normal reaction.
>
> "Q Mr. Carter, did you have an occasion to make any determination as to whether or not he had a pulse?

"A At the scene? Yes, I did.

"Q What did that investigation result in your determining?

"A As to whether or not he had a pulse?

"Q Yes.

"A It was a wrist pulse, and I believe it was, yes, but I can't be positive at this point. I don't remember. A lot of things happened quickly.

"Q Did this appear to be a strong pulse or a weak pulse?

"A It would have been weak."

Mr. Carter further testified that, on the way to the hospital, Mr. Holden's eyes were open as if in a stare, but that he made no movements and did not respond orally to Carter at any time.

Another rescue squad member, William Reed, testified that Mr. Holden appeared to be unconscious, and the emergency room nurse at the hospital, Kathleen Clothier, stated that upon his arrival he had no blood pressure, that medication was administered and he was placed on a cardiac monitor to determine whether or not he had a pulse. The nurse further testified that "[h]e might have had a very few beats on the monitor when they brought him in but he didn't have it too long."

In ruling on the defendant's motion for a new trial on the conscious pain and suffering count, Judge Rasin commented: "I don't think there was any evidence sufficient for a jury to find that there was any conscious pain and suffering in this case." Our review of the record confirms that, although there was some evidence in the case as to the consciousness of Mr. Holden following the accident, there was no evidence as to whether he suffered any pain or was, indeed, capable of sensory perception.

The word "conscious" has been defined as: "[a]ware or sensible of an inward state or outward fact" or "mentally awake, physically active or acute; in a state of consciousness; knowing." 15A C.J.S. Conscious 571 (1967). The mere fact of consciousness after an accident causing bodily injury does not inescapably lead to a conclusion that pain is being

experienced. Additional evidence must be presented on this question in order for an award of damages for conscious pain and suffering to be upheld. *Whalen v. Daugherty*, 290 N.Y.S.2d 3, 5 (Sup. Ct. 1968).

Evidence as to body sounds, such as moaning, gurgling, and heavy breathing, is insufficient to show consciousness or suffering on the part of the victim. *Fialkow v. DeVoe Motors, Inc.,* 270 N.E.2d 798, 802 (Mass. 1971); *Ghiz v. Wantman,* 149 N.E.2d 595, 597 (Mass. 1958); *Carlisle v. Duncan,* 461 S.W.2d 254, 256 (Tex. Ct. App. 1970). On the other hand, exclamations from the victim may establish both consciousness and suffering. *Knight v. Overman Wheel Co.,* 54 N. E. 890, 893 (Mass. 1899) (victim hollered and groaned, stating, "Oh! I am gone," and "I am done for."); *Boyd Construction Co. v. Bilbro,* 210 So. 2d 637, 640 (Miss. 1968) (victim remarked, "Oh, me!"); *Tichenor v. Little,* 279 S.W.2d 379, 381 (Tex. Ct. App. 1955) (victim was " 'attempting to say something, more than once' " and trying to clean mouth of blood so he could speak).

In the instant case, the only sounds testified to by Carter were labored breathing and gurgling, resulting from the swallowing of blood. There was no verbal communication from the victim, and no movement of his arms or other parts of his body to signify the sensation of pain. Moreover, Carter's statement that he was "conscious" was not explained. Even assuming that Carter's experience in rendering first aid qualified him to express an opinion as to the victim's state of consciousness, his statement that Holden was conscious was insufficient to justify a finding of conscious pain and suffering because (1) there was no testimony from Carter as to whether Holden was experiencing pain, and (2) there was no testimony to show that Holden was capable of experiencing pain if he was, indeed, conscious — testimony which only a medical expert could render. In *Plank v. Heirigs,* 156 N.W.2d 193, 203 (S.D. 1968), it was held in this respect that an award of damages for conscious pain and suffering was justified in the light of testimony from the decedent's physician as to her capacity to experience pain and expressions of discomfort:

"We believe the evidence is sufficient to show that [the decedent] was conscious a substantial portion of

the time . . . *and capable of experiencing pain and suffering."* (Emphasis added.)

*See also Jines v. City of Norman,* 351 P. 2d 1048, 1052 (Okla. 1960) (recovery for severe and excruciating conscious pain and suffering *improper* where evidence showed that decedent was conscious, but not that he was experiencing pain); *Wilson v. Pittman,* 307 So. 2d 804, 808 (La. App. 1975).

The decision of the Court of Appeals in *Tri-State Poultry Cooperative, Inc. v. Carey, supra,* upon which appellant relies, is not supportive of her position in this case. In *Tri-State,* there was expert medical testimony from a physician accompanying the victim to the hospital to the effect that the victim was conscious and that he suffered pain before his death. 190 Md. at 125-26, 57 A. 2d at 817. A second expert disputed these conclusions and a genuine issue of fact for jury determination was held to be presented as to whether there could be recovery for conscious pain and suffering. *Id.* at 126, 57 A. 2d at 817.

Therefore, we hold that the lower court properly granted a new trial on the issue of conscious pain and suffering based on insufficiency of the evidence to sustain a jury verdict, and that summary judgment was correctly entered thereafter in favor of the defendant Ory on this question. The court had full knowledge of the testimony which would have been presented if a new trial were held, and could well conclude, in accordance with Md. Rule 610, that there was no genuine issue as to a material fact. The facts before the court were undisputed, and there remained for resolution only the question of whether, as a matter of law, the evidence supported a claim for conscious pain and suffering. Under the authorities here reviewed, it did not. We find no error.

## IV

Appellant has contended that there was reversible error when the trial court denied her motion to preclude testimony concerning conscious pain and suffering; and that the court also erred in the denial of her motion to limit evidence of educational expenses. These motions were made *in limine.*

Our disposition of appellant's contention with respect to evidence bearing upon educational expenses reflects our conclusion that the denial of the second motion *in limine* was, as a matter of substantive law, eminently correct. On the other hand, it is not to be inferred that because we agree that the evidence was insufficient to constitute a cause of action for conscious pain and suffering, the denial of the first motion *in limine* necessitates a finding of reversible error.

Motions *in limine* are not commonly resorted to as a procedural device in Maryland and there is a dearth of appellate comment with respect to their use. Decisions elsewhere, however, clearly indicate that such motions are of limited utility and, indeed, there is substantial authority for the proposition that the denial of a motion *in limine* cannot in and of itself constitute reversible error. *State v. Garrett,* 183 N.W.2d 652 (Iowa 1971). The court there stated:

> "It may be error [to deny a motion in limine] but cannot be reversible error. The reason is simple. The objectionable material has not yet reached the jury's ears. It may never reach the jury . . . . It is only when the [objectionable] material is offered in the jury's presence that the harm or error, if any, has been done. Then of course, the movant, having made the motion in limine is in a much stronger position to claim error."

*See also* Annot., 63 A.L.R.3d 311 (1975); *Burrus v. Silhavy,* 293 N.E.2d 794 (Ind. App. 1973); *Twyford v. Weber,* 220 N.W.2d 919 (Iowa 1974); *Lewis v. Buena Vista Mutual Insurance Assoc.,* 183 N.W.2d 198 (Iowa 1971); *Hartford Accident and Indemnity Co. v. McCardell,* 369 S.W.2d 331 (Tex. 1963); *Zoner v. Hertz Equipment Rental Corp.,* 523 S.W.2d 765 (Tex. Ct. App. 1975).

It is also abundantly clear from the cases cited that the use of a motion *in limine* "should be exceptional rather than general." *Lewis v. Buena Vista Mutual Insurance Assoc., supra,* 183 N.W.2d at 201. It is essentially aimed at material which is inadmissible and prejudicial. In the instant case, the evidence adduced by the appellee on the question of conscious

pain and suffering was indeed admissible. That it was insufficient to constitute a cause of action is another matter. A motion *in limine* may not perform the function of a motion for directed verdict. We find no support, upon principle or authority, for appellant's proposition that the denial of her motions *in limine* constituted reversible error.

## V

Appellant has also challenged the awards to each of the minor children on grounds that the lump sum verdicts for each child were defective. This contention is based in part upon the submission to the jury of loss of educational benefits as an element of damages, a claim of error which we have heretofore rejected. In addition, it is argued that the testimony at trial bearing upon the deceased's conscious pain and suffering was prejudicial error which unduly influenced the awards to each of the children. We also reject this contention.

The authorities on which appellant relies, primarily from other jurisdictions, are based upon the proposition that erroneously-admitted "sympathy-producing" evidence requires reversal of a verdict. *See, e.g., Larson v. Meyer,* 135 N.W.2d 145, 158 (N.D. 1965). Such authorities, however, are inapposite in a situation where, as here, the evidence relating to pain and suffering was admissible. Its only infirmity was its insufficiency.

We must also reject the suggestion contained in appellant's brief that because the awards to each of the children were identical, they are suspect or, indeed, invalid. We observe that the court carefully instructed the jury with respect to the damages which might appropriately be considered for the personal representative, under count one, and the children, under count two. Thus, in the case of the personal representative, the jury was instructed that it should allow the medical and hospital bills as well as the funeral expenses, the amount of which had been stipulated. In addition, the court explained that the personal representative was entitled to their consideration of any conscious pain and suffering that

the deceased experienced as a result of the accident from the time of the injury to the time of death. The court stated:

"You shall allow such sums as in your opinion would have compensated Mr. Holden for conscious pain and suffering had he lived."

With respect to the damages to which the children were entitled, the court instructed that the jury must first consider any financial loss. This was defined to mean any contribution toward their support, whether by way of court order or voluntary payment, until each child attained the age of 21. Also included, the court instructed, was whatever contribution the jury should find "the father would have contributed to higher education for each child [who] . . . would be likely to seek higher education." In addition to this economic loss, the jury was also instructed to consider "without regard to the children's 21st birthday" damages for "the mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, parental care, filial care, attention, advice, counsel, training, guidance and education the children have lost as a result of the death of their father."

In the absence of prejudicial error in the trial court's instructions, the amounts of the verdicts are not reviewable on appeal. *Johnson v. Zerivitz,* 234 Md. 113, 118, 198 A. 2d 254, 257 (1964); *Sun Cab Co. v. Walston,* 15 Md. App. 113, 160, 289 A. 2d 804, 829 (1972), *aff'd in part, rev'd in part,* 267 Md. 559, 298 A. 2d 391 (1973); *see B. & O. Railroad v. State ex rel. Hauer,* 60 Md. 449, 469 (1883). Here, there was no error. Furthermore, the general rule in wrongful death cases is that the award of damages is within the sound discretion of the jury. *Dropo v. City of San Francisco,* 334 P. 2d 972 (Cal. App. 1959); *Flynn v. Vancil,* 242 N.E.2d 237 (Ill. 1968); *Hoffman v. Rengo Oil Co.,* 174 N.W.2d 155 (Mich. App. 1969); *Aubuchon v. LaPlant,* 435 S.W.2d 648 (Mo. 1968).

We would also observe that no request was made by the appellant for a separation by the jury of damages to be awarded to the children with respect to financial loss and solatium. Maryland law clearly permits lump sum verdicts in

wrongful death actions. *Sun Cab Co. v. Walston, supra,* 15 Md. App. at 154, 289 A. 2d at 826 (1972). In our judgment, it is mere speculation that the awards to the children were affected by conscious pain and suffering evidence, and we find no other support for appellant's contention that the lump sum verdicts in this case were defective.

*Judgments affirmed; three-fourths of the costs to be paid by appellant and one-fourth by appellees.*